96 N.J. Super. 149 (1967)
232 A.2d 674
MOUNTCREST ESTATES, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
THE MAYOR AND TOWNSHIP COMMITTEE OF THE TOWNSHIP OF ROCKAWAY AND THE PLANNING BOARD OF THE TOWNSHIP OF ROCKAWAY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 22, 1967.
Decided July 7, 1967.
*151 Before Judges GAULKIN, LEWIS and LABRECQUE.
Mr. William A. Ancier argued the cause for appellant (Messrs. Sherman, Ancier & Rosenstein, attorneys).
Mr. George H. Harbaugh argued the cause for respondents.
*152 The opinion of the court was delivered by GAULKIN, S.J.A.D.
Plaintiff sued to have an amendment to the Rockaway zoning ordinance declared invalid "as to the lands * * * owned by plaintiff" and to compel the planning board to give tentative approval to its preliminary plat. The Law Division entered judgment in favor of defendants and plaintiff appeals.
In August 1965 the Township Committee of Rockaway adopted an ordinance (hereafter the August amendment) amending its 1958 zoning ordinance. It increased the height, yard, frontage and lot area requirements in "AA," "A" and "B" residential districts; the minimum area requirements with regard to lots in "AA" and "A" districts were more than doubled, and in the "B" district the minimum was increased from 7,700 to 13,175 square feet. Plaintiff owns about 63 acres of vacant land in the "B" district. The amendment added provisions for "open space zoning" in "A" and "B" districts. Open space zoning was defined in the ordinance as
"* * * a permitted reduction in lot size and lot area requirements in major subdivisions in the A and B Zone Districts in which the density requirements (dwelling units per acre) are maintained and where all resulting undeveloped land in the said subdivision is deeded to the Township of Rockaway for public purposes."
It was stated with regard to the "B" residence zone that the
"* * * minimum lot area requirement of 13,175 square feet may be reduced to not less than 7,700 square feet measured within 125 feet of the front street right-of-way provided all of the foregoing requirements are complied with in their entirety:
(1) That percentage of the area of the total tract equal to that percentage by which the average lot area is reduced from 13,175 square feet is deeded to the Township of Rockaway for public purposes.
(2) No area to be so deeded shall be less than 5 acres unless the area is to be joined to an existing parcel of land in public ownership, the aggregate of which shall not be less than 8 acres or unless a smaller area is shown on the Master Plan or Official Map of the Township of Rockaway.
(3) Any subdivision employing open-space zoning shall not be approved if there is more than one building lot for every 15,500 square *153 feet of the area of the tract including all lands to be deeded to the Township of Rockaway.
(4) The area to be deeded for open space under the terms of this section shall be at a location and shape as required and approved by the Planning Board."
Section 5 of the amendment provided that existing platted and developed lots, which failed to comply with the new minimum size requirements of the ordinance, "may be used for any use not otherwise prohibited in the District in which it lies, provided said lot is in single ownership * * * and * * * that the proposed use does not violate any of the yard requirements." Further, by section 7 it was provided:
"This Ordinance shall not affect any lands or premises which have been laid out on a plat or plats which have received preliminary or tentative approval, pursuant to the provisions of N.J.S.A. 40:55-1.18, prior to the adoption of this Ordinance, and which plat or plats subsequently receive final approval within the prescribed statutory time period, as set forth in N.J.S.A. 40:55-1.18, and it is further provided that the time period that such approval shall remain in force and effect shall be determined by the terms of a written agreement entered into and executed by the Township of Rockaway, and the applicant who has received tentative or preliminary approval and then final approval, such an agreement being known as a `Developer's Agreement'."
On October 13, 1965 the township committee adopted another amendment to the zoning ordinance (the October amendment), affecting "B" residence districts only. While the 13,175 square foot minimum area lot and certain setback requirements were retained, the "open space" provisions were changed so that the 13,175 square feet requirement could be reduced to no less than 10,625 square feet measured within 125 feet of the front line (85' x 125')  provided that the equivalent of the amount reduced from the 13,175 minimum lot size was deeded to the township pursuant to the conditions quoted above.
The trial court found as a matter of fact that
"Plaintiff, in January 1965, purchased the tract in the `B' zone, and in May 1965 submitted to the Planning Board a sketch plat *154 setting forth its proposal to sub-divide the tract into 247 lots, all of which would have complied with the minimum lot size requirements of the original zoning ordinance. Plaintiff refused to reduce its proposed number of lots to 150 as requested by the Board, and finally made a formal application for sketch plat approval. In August 1965, the application was denied, ostensibly on the ground that the lots in the proposed subdivision would not comply with the minimum lot size requirements imposed by the amendatory ordinance."

I
Mountcrest contends that the evidence demonstrates it was unreasonable for the municipality to increase the minimum area lot size in the "B" zone from 7,700 to 13,175 square feet. We disagree.
Mountcrest's argument is based in large part upon the fact that about 85% of the lots in "B" district are built upon or platted and "all, or practically all, the existing lots in the White Meadow Lake zone will be non-conforming," because they are smaller than 13,175 square feet. But "[t]he comprehensive plan embraced by the original zoning ordinance is of course mutable. If events * * * prove that the plan did not fully or correctly meet or anticipate the needs of the total community, amendments may be made * * *." Kozesnik v. Montgomery Tp., 24 N.J. 154, 167 (1957). A presumption of validity attaches to the amended ordinance, and the burden upon the attacker to prove it otherwise is a heavy one. Zampieri v. River Vale Tp., 29 N.J. 599, 606 (1959); Ward v. Montgomery Tp., 28 N.J. 529, 539 (1959); Bogert v. Washington Tp., 25 N.J. 57, 62 (1957). Certainly the existing uses of property are a relevant factor to be considered when evaluating the validity of an ordinance, but that factor alone is not controlling. Zampieri v. River Vale Tp., supra, at p. 607; Bogert v. Washington Tp., supra, at p. 63.
Here, the undeveloped, unplatted parcels in the "B" zone constituted a total of 180 acres. The municipality's problems with respect to congestion, overcrowding and inability to provide public facilities due to the population explosion will be lessened because between 180 and 250 fewer homes can *155 be built in the "B" district under the amended ordinance than could have been built before the amendments  a possible difference in population of from 500 to 1,000 persons. These problems are the legitimate concern of the municipality and may be remedied by amendment to the zoning ordinance. N.J.S.A. 40:55-32; Gruber v. Mayor, etc., of Raritan Tp., 39 N.J. 1, 9; Bogert v. Washington Tp., supra, at p. 65. In short, we hold that plaintiff did not sustain its burden of proving that increasing the minimum lot size was unreasonable. Cf. Fanale v. Borough of Hasbrouck Hts., 26 N.J. 320, 327 (1958); Clary v. Borough of Eatontown, 41 N.J. Super. 47 (App. Div. 1956).

II
Mountcrest contends that it was treated discriminatorily. The trial court found no such discrimination, and we agree. Plaintiff seems to contend the amendments were triggered by its acquisition of the land and the announcement of its intention to build 247 houses. Even if that were true, it would not vitiate the amendments. However, the evidence indicates that the amendments were not conceived for plaintiff's special disadvantage. As we have pointed out, minimum lot sizes were increased in several zones. In February 1965, one month after Mountcrest acquired its tract, the consultant to the township planning board reported to the board that he had studied the "suggestions and requests" made during "the past six months" that the minimum lot size in "B" district be made one-half acre, and he recommended that the increase be to 10,625 square feet. In June 1965 the August amendment was introduced. Plaintiff did not make formal application for preliminary subdivision approval until July. The planning board hearing on the application was conducted on August 19, 1965, nine days after the August amendment was passed and one day after it became effective. The decision of the board was rendered within the time required by statute. N.J.S.A. 40:55-1.18.
*156 All 180 acres of vacant land in the "B" district were treated similarly. The fact that plaintiff owned the largest and most usable portion of that 180 acres is not controlling.
In short, we find no unlawful discrimination against plaintiff.

III
Plaintiff's chief arguments are based upon the "open space" provisions. It contends that these provisions are ultra vires, contrary to the Zoning, Planning and Home Rule Acts, violate the requirement of uniformity and deny plaintiff the equal protection of the law.
At oral argument plaintiff conceded that if the open space provisions are invalid but severable, it will have to abide by the 13,175 square foot requirement. Nevertheless, plaintiff pressed its attack, saying it had no wish to avail itself of the open space provisions even if valid.
L. 1967, c. 61, approved May 23, 1967, authorizes municipalities to pass "open space," "cluster" and "planned community" zoning ordinances, but all ordinances adopted after the enactment of said statute will have to comply with its provisions. Since we find the open space provisions in the Rockaway ordinance invalid for the reasons hereafter set forth, we deem it unnecessary to pass upon whether Rockaway had the power to pass an "open space" ordinance prior to the enactment of said statute. See Chrinko v. South Brunswick Tp. Planning Board, 77 N.J. Super. 594 (Law Div. 1963); cf. Nelson v. South Brunswick Planning Board, 84 N.J. Super. 265, 277 (App. Div. 1965).
The chief reasons we find the open space provisions of the amendments invalid are:
1. They contain no limitation as to the nature of the public use to be made of the donated property. Such property could be used to build a jail, a municipal garage or sewage disposal plant, a dog pound or other similar structure incompatible with residences and occupying all of the donated space. *157 Cf. section 3 (c) of chapter 61. Furthermore, it grants an unfettered right in the planning board to determine the location and shape of the lands donated. We believe these vital provisions of the ordinance to be invalid for lack of adequate standards. N.J.S.A. 40:55-1.14, 1.16. Cf. Lake Intervale Homes, Inc. v. Parsippany-Troy Hills, 28 N.J. 423, 441 (1958); Levin v. Livingston Tp., 35 N.J. 500, 512-514 (1961). Since they are basic to them, all of the open space provisions of the amendments fall with them.
2. Section 7 of the ordinance appears to provide that the time period during which final approval of a plat plan shall remain in force "shall be determined by the terms of a written agreement entered into and executed by the Township of Rockaway" and the developer and that such agreements may be for any period satisfactory to the contracting parties. Counsel for Rockaway so construes the ordinance. We need not express an opinion as to whether L. 1967, c. 61, permits freezing final approval for any such indefinite time. We do hold that, when these amendments were adopted, no such unlimited freezing was permitted. See Levin v. Livingston Tp., supra, at pp. 518-519; Hilton Acres v. Klein, 35 N.J. 570, 578 (1961); N.J.S.A. 40:55-1.18. To the extent that the "developer's agreement" provided for in section 7 of Rockaway's amended ordinance provided to the contrary, it permitted zoning by contract and the section was therefore invalid. Cf. Midtown Properties v. Madison Tp., 68 N.J. Super. 197 (Law Div. 1961), affirmed 78 N.J. Super. 471 (App. Div. 1963).
However, we find the open space provisions to be severable from the balance of the amendments, and that they may be severed without impairing the sufficiency or the validity of the balance of the ordinance as amended. In short, plaintiff must comply with the 13,175 square foot provision of the ordinance.
We have considered the other arguments advanced by the plaintiff but find it unnecessary to discuss them in detail. The *158 judgment affirming the refusal to approve plaintiff's subdivision application is affirmed. The matter is remanded to the trial division for the entry of judgment in accordance with this opinion. No costs.