117 N.J. Super. 11 (1971)
283 A.2d 353
OAKWOOD AT MADISON, INC., A CORPORATION OF THE STATE OF NEW JERSEY, BEREN CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, DOROTHY MAE SHEPARD, LOUVENIA ALSTON, WILLIAM BAYLIS, BRENDA SMITH, LIZZIE WALKER AND GERALDINE YORK, PLAINTIFFS,
v.
THE TOWNSHIP OF MADISON AND THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided October 27, 1971.
*13 Mr. Frederick C. Mezey, Mr. Dennison Ray of the New York bar, admitted pro hac vice, and Mrs. Lois Thompson of the New York bar, admitted pro hac vice, for plaintiffs (Messrs. Mezey & Mezey, attorneys).
Mr. Richard F. Plechner, for the defendant Township of Madison.
Mr. Jonathan Weiner, Deputy Attorney General for defendant State of New Jersey (Mr. George F. Kugler, Attorney General, attorney).
FURMAN, J.S.C.
This prerogative writ action challenges the constitutionality of the Zoning Act, N.J.S.A. 40:55-30 et seq., and the validity under that act of the Madison Township zoning ordinance adopted on September 25, 1970. *14 Plaintiffs are two developers, who own vacant and developable land in Madison Township, and six individuals, all with low income, representing as a class those who reside outside the township and have sought housing there unsuccessfully because of the newly adopted zoning restrictions, including one and two-acre minimum lot sizes.
Madison Township is 42 square miles in the southeast corner of Middlesex County, extending from Raritan Bay westward. In two decades of explosive growth from 1950 to 1970, paralleling the trend in the county and region, its population mounted from 7,366 to 48,715. Most of the new housing was single-family in developments on 15,000 square foot or smaller lots, and since 1965 multi-family in garden apartments. Reflecting school construction and other expanded costs of government, the real property tax rate increased from one of the lowest in 1950 to the highest in 1970 in the county.
Despite this population surge much of the township, approximately 30% of its land area, excluding Cheesequake State Park, is vacant and developable. A member of the planning firm which submitted a new master plan in May 1970 testified that the township could hold a population of 200,000 without overcrowding.
A new township administration in 1970 determined to curb population growth significantly and thus to stablize the tax rate. The township was to "catch its breath," a phrase recurrent in the testimony. Because of exigencies of time arising from a court order in other litigation, the planning firm which was retained early in 1970 was given only two months within which to submit its proposal for a master plan. The deadline was met. The master plan proposal relied in part upon the studies of the township's previous planning consultant. It purported to represent a shift in approach, from explosive growth on a patchwork basis to orderly growth in densely developed areas and the preservation of open areas. The new planning firm's recommendations *15 were followed, with three important exceptions discussed infra, in the ensuing zoning ordinance.
The attack on the constitutionality of the Zoning Act is novel. By way of background plaintiffs suggest that the purposes of zoning, which were enacted in 1928, a time of relatively static population, are not commensurate with the general welfare today, a time of rapid population expansion. Specifically plaintiffs contend that the declared zoning purposes are fatally defective, thwarting the general welfare, because they fail to encompass housing needs.
N.J.S.A. 40:55-32 is as follows:
Such regulations shall be in accordance with a comprehensive plan and designed for one or more of the following purposes: to lessen congestion in the streets; secure safety from fire, flood, panic and other dangers; promote health, morals or the general welfare; provide adequate light and air; prevent the overcrowding of land or buildings; avoid undue concentration of population. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving the value of property and encouraging the most appropriate use of land throughout such municipality.
The New Jersey Constitution (1947), Art. IV, § VI, par. 2, empowered the Legislature to enact a zoning enabling law authorizing municipalities to adopt zoning ordinances to regulate land uses. N.J.S.A. 40:55-30 et seq. was thereupon reenacted. The zoning enabling act is not immune from other constitutional requirements, including in conformity with the police power that it must be in reasonable furtherance of the public health, safety or general welfare. Fischer v. Bedminster Tp., 11 N.J. 194 (1952); Mansfield & Swett, Inc., v. West Orange, 120 N.J.L. 145 (Sup. Ct. 1938); cf. Ward v. Scott, 11 N.J. 117 (1952).
Provision for housing needs, local and regional, is not a specified purpose of zoning under N.J.S.A. 40:55-32, but promotion of the general welfare is. Although stated in the disjunctive as a zoning purpose, the general welfare must *16 not be circumvented or flouted in municipal zoning. Harrington Glen, Inc., v. Mun. Bd. Adj., Leonia, 52 N.J. 22, 32 (1968); Roselle v. Wright, 21 N.J. 400, 410 (1956); Katobimar Realty Co. v. Webster, 20 N.J. 114, 122, 123 (1955); Schmidt v. Board of Adjustment, Newark, 9 N.J. 405, 416 (1952); Gabe Collins Realty, Inc., v. Margate City, 112 N.J. Super. 341 (App. Div. 1970).
Thus, it cannot be maintained that the Legislature in the Zoning Act has empowered municipalities to defy the general welfare or to ignore housing needs, insofar as such needs are embraced within the general welfare. Whether provision for housing needs is or is not enumerated as a purpose of zoning appears to be a legislative, not a judicial, judgment. The challenge to the constitutionality of the Zoning Act is therefore dismissed.
Alternatively, plaintiffs contend that the township zoning ordinance is invalid because it fails to promote reasonably the legislative purposes of the Zoning Act in several provisions dealing with single and multi-family housing which are so essential that the entire ordinance should be struck down.
About 55% of the land area of the township is zoned R40 or R80. The R80 zone is new, the R40 zone expanded. Minimum lot size is one acre in R40 and two acres in R80. Minimum floor space is 1500 square feet in R40 and 1600 square feet in R80. According to the former township engineer, 80% of R40 (or about 5500 acres) and 30% of R80 (or about 2500 acres) is vacant and developable. Minimal acreage is vacant and developable in the R7, R10 and R20 zones. Since the 1930s there has not been a development on two-acre lots within the township. Since 1964 only one subdivision plan for one-acre lots has been proposed. Land and construction costs are such that the minimum purchase price in R40 would be $45,000 and in R80 $50,000. Only those with incomes in the top 10% of the nation and county could *17 finance new housing in R40; an even smaller percentage in R80.
The multi-family zones, which are scattered through the township, are so restricted in land area that no more than 500 to 700 additional units can be built in all. Three or more bedroom units are not permitted. Two bedroom units must be limited to 20% of the total units in any apartment development. New units must not exceed 200 in any year.
Madison Township, among other municipalities, is encouraging new industry. Industry is moving into the county and region from the central cities. Population continues to expand rapidly. New housing is in short supply. Congestion is worsening under deplorable living conditions in the central cities, both of the county and nearby. The ghetto population to an increasing extent is trapped, unable to find or afford adequate housing in the suburbs because of restrictive zoning. See N.J.S.A. 55:16-2 (L. 1967, c. 112): "It is hereby declared that there is a severe housing shortage in the State. * * *"
The township concedes the invalidity of the limitation to 200 new multi-family units per year but defends all other provisions of the zoning ordinance which are challenged. Its contentions are that it is seeking a balanced community, encouraging high income and moderate income housing to balance its predominant low income housing, and protecting drainage systems where high density residential development might result in floods and surface drainage problems and interfere with and imperil underground water resources.
As recently stated by the Supreme Court in Harvard Enterprises, Inc., v. Bd. of Adj., Madison Tp., 56 N.J. 362 (1970), litigation arising out of prior zoning provisions in Madison Township:
* * * it should be noted that the judicial role in reviewing a zoning ordinance is tightly circumscribed. There is a strong presumption in favor of its validity, and the court cannot invalidate it, or any provision thereof, unless this presumption is overcome by a clear showing that it is arbitrary or unreasonable. [at 368]
*18 The underlying objective of the ordinance under attack was fiscal zoning, zoning as a device to avoid school construction and other governmental costs incident to population expansion. Housing needs of the region were not taken into consideration in its enactment, according to several members of the township council and planning board.
The three recommendations in the proposed master plan which were rejected by the township council and planning board all would have tended towards increased population and governmental services. The planning consultant advised no limitation on the number of bedrooms in multi-family apartment units, minimum floor spaces of 1100 square feet in the R40 zone and 1200 square feet in the R80 zone, and "floating zones" of high population density on less than half-acre minimum lots in any zone within the township but separated from each other, up to 100 houses in each floating zone.
Fiscal zoning per se is irrelevant to the statutory purposes of zoning. But the Supreme Court in Gruber v. Mayor, etc., Raritan Tp., 39 N.J. 1, 9 (1962) recognized that "alleviating the tax burden and the harmful school congestion" was a permissible zoning purpose if done reasonably and in furtherance of a comprehensive zoning plan. Gruber and the antecedent Newark, etc., Cream Co. v. Parsippany-Troy Hills Tp., 47 N.J. Super. 306 (Law Div. 1957), may be distinguished because they dealt with the pursuit of tax revenues through zoning for new industry, not the stabilization of the tax rate through zoning to exclude new low and moderate income housing.
In any event, the Madison Township zoning ordinance must stand or fall not as fiscal zoning. The test must be whether it promotes reasonably a balanced and well ordered plan for the entire municipality.
Several decisions have recognized balance within a municipality, which is in part undeveloped, as a valid zoning purpose. Kozesnik v. Montgomery Tp., 24 N.J. 154 (1957); Berdan v. Paterson, 1 N.J. 199, 205 (1948); Newark, etc., Cream Co. v. Parsippany-Troy Hills Tp., supra.
*19 Fischer v. Bedminster Tp., supra, is the leading New Jersey decision sustaining a large minimum lot size, five acres over 85% of the municipality. Its rationale does not apply. Chief Justice Vanderbilt rested his holding on "preserving the character of the community, maintaining the value of property therein and devoting the land throughout the township for its most appropriate use." The Madison Township zoning ordinance under attack has provided for one-acre and two-acre minimum lot sizes on largely vacant land, which as such has no established residential character or residential property values.
Other New Jersey decisions in favor of minimum lot requirements concern relatively small lot sizes in built-up communities. Bogert v. Washington Tp., 25 N.J. 57 (1957); Mountcrest Estates, Inc., v. Mayor, etc., Rockaway Tp., 96 N.J. Super. 149 (App. Div. 1967); Clary v. Eatontown, 41 N.J. Super. 47 (App. Div. 1956).
On the other hand, the highest courts of Pennsylvania and Virginia has struck down two, three, and four-acre minimum lot requirements in undeveloped areas as invalid zoning, without reasonable relation to the general welfare. Appeal of Kit-Mar Builders, Inc., 439 Pa. 466, 268 A.2d 765 (Sup. Ct. 1970); National Land and Investment Co. v. Kohn, 419 Pa. 504, 215 A.2d 597 (Sup. Ct. 1965); Board of County Sup'rs of Fairfax County v. Carper, 200 Va. 653, 107 S.E.2d 390 (Sup. Ct. App. 1959).
The Pennsylvania Supreme Court commented in National Land:
* * * Four acre zoning represents Easttown's position that it does not desire to accommodate those who are pressing for admittance to the township unless such admittance will not create any additional burdens upon governmental functions and services. The question posed is whether the township can stand in the way of the natural forces which send our growing population into hitherto undeveloped areas in search of a comfortable place to live. We have concluded not. A zoning ordinance whose primary purpose is to prevent the entrance of newcomers in order to avoid future burdens, economic and otherwise, upon the administration of public services and facilities can not be held valid. [at 612]
*20 Minimum floor spaces by zoning were ruled valid in Lionshead Lake, Inc., v. Wayne Tp., 10 N.J. 165 (1952), an authority which is controlling if, in context with the entire challenged zoning ordinance, the minimum floor spaces of 1500 square feet in R40 and 1600 square feet in R80 serve the valid zoning purpose of a balanced community. See Nolan and Horack, "How Small A House?  Zoning for Minimum Space Requirements," 67 Harv L. Rev. 967 (1954), and Haar, "Zoning for Minimum Standards: The Wayne Township Case," 66 Harv. L. Rev. 1051 (1953).
In Madison Township's approach to the objective of balance, its attempted cure is a worse malady than whatever imbalance existed. About 8000 acres of land, apparently prime for low or moderate income housing development, have been taken out of the reach of 90% of the population, prohibitive in land and construction costs. The acreage available for multi-family apartments units is minuscule. Families with more than one child are barred from multi-family apartments because of the one and two bedroom restrictions, restrictions without any guise of a health or safety purpose.
The exclusionary approach in the ordinance under attack coincides in time with desperate housing needs in the county and region and expanding programs, federal and state, for subsidized housing for low income families.
Regional needs are a proper consideration in local zoning. DeSimone v. Greater Englewood Housing Corp. No. 1, 56 N.J. 428 (1970); Duffcon Concrete Products v. Cresskill, 1 N.J. 509, 513 (1949); Gartland v. Maywood, 45 N.J. Super. 1, 6 (App. Div. 1957); Molino v. Mayor, etc. Glassboro, 116 N.J. Super. 195, 204 (Law Div. 1971).
In pursuing the valid zoning purpose of a balanced community, a municipality must not ignore housing needs, that is, its fair proportion of the obligation to meet the housing needs of its own population and of the region. Housing needs are encompassed within the general welfare. The general welfare does not stop at each municipal boundary. *21 Large areas of vacant and developable land should not be zoned, as Madison Township has, into such minimum lot sizes and with such other restrictions that regional as well as local housing needs are shunted aside. Vickers v. Tp. Com., Gloucester Tp., 37 N.J. 232 (1962), upholding a prohibition against trailer camps anywhere within a municipality, is not to the contrary.
The ordinance under attack must be held invalid because it fails to promote reasonably a balanced community in accordance with the general welfare, unless it is defensible on some other ground. Such other ground is urged, namely that low population density zoning provides protection against floods and other surface drainage problems and against diversion of water from an aquifer, an underground water resource.
Most of the R80 districts and a few of the R40 districts are along the course of four brooks running northwesterly through the township into South River. Deep Run, rising in Burnt Fly Bog, which is partially in the township, has overflowed its banks recurrently during heavy storms. Meadowland and woodland abut Matchaponix Brook, the western boundary of the township. Burnt Fly Bog, which is zoned R40 and R80, may be both an intake and a discharge area for the 45 square mile Englishtown aquifer.
Flood or drainage problems were not discussed in the proposed master plan of May 1970, in no specific detail in the studies of the previous planning consultant. There was no consideration in the record of alternative plans, such as retention basins. The common knowledge that impermeable surfaces, specifically roofs and streets, increase surface water run-off is insufficient to support the rezoning of substantially all vcaant land in the township into one and two acre zones. Similarly, whether the Englishtown aquifer would be imperiled by the development of the Burnt Fly Bog area is a specialized hydrological subject.
Only engineering data and expert opinion and, it may be, ecological data and expert opinion could justify the ordinance *22 under attack. These were lacking both in the legislative process and at the trial. The record fails to substantiate that safeguarding against flood and surface drainage problems and protection of the Englishtown aquifer would be reasonably advanced by the sweeping zoning revision into low population density districts along the four water courses and elsewhere or the exclusionary limitations on multi-family apartment units.
For all the foregoing reasons the Madison Township zoning ordinance of September 25, 1970 is held to be invalid in its entirety.