**LUM YIP KEE, LIMITED,** a Hawaii corporation, Plaintiff–Appellant/Cross–Appellee, v. **CITY AND COUNTY OF HONOLULU,** a Hawaii municipal corporation, Defendant–Appellee/Cross–Appellant, and **THE SAVE DATE–LAAU COMMITTEE,** a Hawaii unincorporated association, Intervenor–Defendant–Appellee/Cross–Appellant

NO. 12663

(CIV. NO. 84–2125)

JANUARY 10, 1989

LUM, C.J., NAKAMURA, HAYASHI, AND WAKATSUKI, JJ., AND INTERMEDIATE COURT OF APPEALS JUDGE HEEN IN PLACE OF PADGETT, J., RECUSED

180

OPINION OF THE COURT BY LUM, C.J.

In this case, landowner Lum Yip Kee, Ltd., challenges the validity of two ordinances changing the land use designation of its property from "High Density Apartment" to "Low Density Apartment." The first ordinance was adopted by the voters of the City and County of Honolulu through the "initiative" process.[1]   The second ordinance was adopted by the Honolulu City Council as part of the City's annual development plan review process. Lum Yip Kee appeals the lower court's ruling upholding the ordinance adopted by the Honolulu City Council (City Council Ordinance). The City and County of Honolulu (City) and the Save Date–Laau Committee (Committee) appeal the lower court's ruling invalidating the ordinance adopted by voter initiative (Initiative Ordinance). We agree with the lower court that the City Council Ordinance is valid, and therefore do not reach the question of the validity of the Initiative Ordinance.

I.

This case involves a 5.5 acre parcel of land (the Date–Laau Tract) located at the corner of Date and Laau Streets in the McCully–Moiliili area of Honolulu. Lum Yip Kee has owned the land since 1932. From 1945 on, the Date–Laau Tract was zoned for high density apartment use.[2] In 1957, Lum Yip Kee leased the Tract to Kapiolani Development Company for a term of 55 years. Kapiolani Development Company, its sub-lessees, and their further sublessees and assignees constructed two and

---

[1] Section 3–401 of the Revised Charter of the City and County of Honolulu (Charter) provides that: "The power of electors to propose and adopt ordinances shall be the initiative power."

[2] On July 24, 1945, the Honolulu Board of Supervisors zoned the Tract "Hotel and Apartment," allowing construction up to a height limit of 80 feet. The Tract remained so zoned until the Honolulu City Council adopted a Comprehensive Zoning Code on January 2, 1969, which zoned the Tract "A–4 Apartment," with a height limit of 350 feet.

three story apartment buildings containing 262 dwelling units, most of which are owned as cooperative apartments.

In 1973, the Revised Charter of the City and County of Honolulu (Charter) was amended to provide for creation of eight "development plans" for the City and County of Honolulu. Under the Charter, land use planning and regulation is implemented through a three–tiered regime consisting of (1) an islandwide General Plan, (2) eight regional development plans, and (3) zoning and subdivision laws, rules, and regulations. While the General Plan guides development by expressing overall general goals to be sought in the planning process, the actual physical development of a site is controlled by the development plan for the area in which the site is located, and its zoning. *Protect Ala Wai Skyline v. Land Use & Controls Comm.*, 6 Haw. App. 540, 548, 735 P.2d 950, 955 (1987).

The General Plan is a document setting forth the City's "broad policies for the long range development of the city."[3] Charter § 5–408. In contrast, the development plans are "relatively detailed schemes for implementing and accomplishing the development objectives and policies of the general plan within the several parts of the city." *Id.* § 5–409.

Each development plan consists of a textual component and a map component. The textual component contains statements of standards and principles with respect to land uses within the area, design principles and controls, the desirable sequence of development, and other factors important to the orderly implementation of the General Plan. Charter § 5–409. The development plan "Land Use Map" indicates the location of various land uses such as residential, recreation and parks, agricultural, commercial, military, and preservation. The "Public Facilities Map" shows the existing and future location of roads and streets, sewer lines and other proposed facilities. Revised Ordinances of Honolulu 1978 (1983 ed.), Ch. 32, art. 1 (1986 Supp.) (Revised Ordinances). Development plans and amendments thereto are adopted by City Council ordinance. Charter § 5–412(1).

The Charter delegates to the Chief Planning Officer, who heads the City Department of General Planning, the responsibility for reviewing the

---

[3] Prior to the Charter amendment, the General Plan contained a comprehensive map of planned land uses, the "Detailed Land Use Map." After the creation of the development plans, the General Plan no longer contained a map, but became a statement of policies to guide long range development.

development plans annually. Charter § 5–403. The Chief Planning Officer refers proposed amendments to the City Planning Commission which reviews the amendments, conducts public hearings, and submits written findings and recommendations to the City Council for its consideration and action. *Id.* §§ 5–406, 5–413(1). Prior to adopting any amendment, the Council must also hold a public hearing and promulgate written findings of fact. *Id.* § 5–413(2). In addition, the Charter requires that public hearings on plan amendments provide interested persons a reasonable opportunity to be heard. *Id.* § 5–413(3).

County zoning is governed by the Land Use Ordinance, Revised Ordinances, Chapter 21A. Zoning ordinances regulate the use of land within clearly demarcated zones and set detailed standards for the height, bulk, and location of buildings. Honolulu General Plan, Revised Ordinances, Appendix "I". The Charter requires zoning ordinances to conform to and implement the development plan for that area. Charter § 5–412(3). In order to meet this conformance requirement, it is frequently necessary for a landowner first to seek a development plan amendment from the City before requesting a zoning change. D. Callies, *Regulating Paradise: Land Use Controls in Hawaii* 27 (1984).

On November 25, 1981, the Honolulu City Council approved a development plan for the "Primary Urban Center" which included the Date–Laau Tract. The development plan originally designated the Tract for "High Density Apartment" use.[4]

During the first annual development plan review in 1982–83, the McCully Neighborhood Board requested that the plan for the Primary Urban Center be amended to change the Date–Laau Tract from "High Density Apartment" to "Medium Density Apartment."[5] Residents were concerned about loss of existing affordable housing units, obstruction of views, capacity of existing water and sewer lines, and detrimental effects

---

[4] "High Density Apartment" designation has a height limit of 350 feet and a density guideline of 140 dwelling units per net acre. Revised Ordinances § 32–2.2.

[5] The Medium Density Apartment designation has a height limit of 150 feet and a density guideline of 90 dwellings per net acre. Revised Ordinances § 32–2.2.

on traffic patterns and the character of the neighborhood. The City Department of General Planning recommended that High Density Apartment designation be retained because it conformed with adjacent planned and existing high density development along Date Street, no significant views would be blocked, facilities were adequate, and the large lot area and single ownership were suitable for development as High Density Apartment. On June 8, 1983, the City Council adopted the proposed amendment redesignating the site to Medium Density Apartment. In conformity with the new development plan designation, the Council rezoned the Tract "A–2" Apartment by ordinance approved May 23, 1984.

In connection with the 1983–84 annual review, the City Council, at the request of Lum Yip Kee, initiated an amendment to the development plan to restore the High Density Apartment designation for the Date–Laau Tract. Again, the Department of General Planning recommended High Density Apartment as the most suitable use for the Tract. In May 1984, the Council adopted the proposed amendment over strong opposition from affected residents, the Neighborhood Board, citizen groups, and council members voting in the minority.

Shortly thereafter, on May 28, 1984, the Save Date–Laau Committee was formed and a petition drive begun to put a proposed initiative ordinance on the ballot in the November 1984 general election to redesignate the tract "Low Density Apartment."[6] The Initiative Ordinance included three provisions: (1) a development plan amendment to redesignate the Date–Laau tract Low Density Apartment; (2) a zoning map amendment to downzone the parcel to "A–1 Apartment"; and (3) a requirement that an applicant seeking a development plan amendment give written notice of such proposed change to all affected owners, lessees, and residents.

At the general election on November 6, 1984, the voters adopted the Initiative Ordinance by a 51 per cent to 49 per cent majority vote. On December 31, 1984, Lum Yip Kee filed suit against the City in circuit court seeking invalidation of the Initiative Ordinance. The Save Date–Laau Committee intervened as a Defendant.

Earlier that year, on June 20, 1984, the City Council adopted a resolution requesting that a proposed amendment redesignating the Date–Laau

---

[6]The Low Density Apartment designation has a height limit of 30 feet and a density guideline of 30 dwelling units per net acre. Revised Ordinances § 32–2.2.

Tract to Low Density Apartment be reviewed by the Department of General Planning in connection with the 1984–85 development plan review. On February 12, 1985, the Planning Commission, after holding a public hearing and reviewing the report of the Department of General Planning, submitted a "no action" recommendation to the Council, stating that the Commission was unable to reach a decision on the land use issues. The Charter provides that a "no action" vote of the Commission has the effect of a denial. The amendment can nevertheless be adopted by the Council, but only by a two–thirds vote of its entire membership. Charter § 5–412(2).

On March 19, 1985, the City Council Committee on Planning and Zoning held a public hearing on the proposed amendment. In addition, the Committee held public decision making sessions for each individual proposed amendment. On May 22, 1985, the City Council approved redesignation of the Date–Laau Tract from High Density Apartment to Low Density Apartment as part of the overall Development Plan Amendment Ordinance, No. 85–46. Thereafter, Lum Yip Kee amended its complaint asking that the court also invalidate the City Council Ordinance.[7]

In its Amended Complaint, Lum Yip Kee challenged the validity of the Initiative Ordinance on the grounds that it violated Charter provisions setting forth technical requirements for all ordinances. As to both the Initiative Ordinance and the City Council Ordinance, Lum Yip Kee claimed the ordinances were invalid because (1) they violated City requirements that development plan amendments must be consistent with the development plan and objectives of the general plan; (2) they constituted illegal "spot zoning"; and (3) they violated State laws governing land use planning and zoning.[8]

On cross motions for summary judgment on all issues, the lower court invalidated the Initiative Ordinance on the ground that Hawaii Revised Statutes (HRS) § 46–4 vests zoning power exclusively in the City Council which is required to accomplish zoning changes only within the

---

[7] Lum Yip Kee sought the invalidation of only that portion of the City Council Ordinance which designated the Date–Laau Tract for Low Density Apartment on the development plan for the Primary Urban Center.

[8] The Amended Complaint also claimed monetary damages due to the loss in value of the Date–Laau Tract allegedly caused by the subject ordinances; however, Lum Yip Kee subsequently withdrew its claim for damages.

framework of a long–range, comprehensive plan, and therefore the authority to enact zoning ordinances could not be committed to the voters by the Charter. However, the court found the City Council Ordinance valid because it was adopted in accordance with the procedural requirements outlined in the Charter for development plan amendments. All parties appealed.

## II.

We now consider Lum Yip Kee's challenges to the validity of the City Council Ordinance amending the development plan. First, the landowner claims that the ordinance violates the Hawaii State Planning Act, HRS Chapter 226. Secondly, Lum Yip Kee contends that the Ordinance constitutes invalid "spot zoning" because it singled out the Date–Laau Tract for a use different from and inconsistent with the surrounding area and not in accordance with the comprehensive plan. We disagree and therefore affirm the lower court's ruling upholding the validity of the Ordinance.

## A.

Lum Yip Kee first claims that the City Council Ordinance redesignating the Date–Laau Tract to Low Density Apartment was merely a "rubber–stamp" of the results of the initiative vote and that the Council did not consider any land use planning issues as required by the Hawaii State Planning Act, HRS Chapter 226. Specifically, Lum Yip Kee argues that the Council failed to comply with the State Planning Act requirements for the formulation and amendment of county general plans and development plans. HRS § 226–61[9] requires that county general and development plans be (1) formulated with input from the state and county agencies as well as the general public, (2) take into consideration the state functional plans, and (3) be formulated on the basis of sound rationale, data, analyses, and input from state and county agencies and the general public.

---

[9] In 1987, HRS § 226–61 entitled "County General Plans" was redesignated as § 226–60. (1987 Supp.).

Lum Yip Kee's contention that the City Council Ordinance was only a "rubber stamp" is based on the following language in the report of the Council Planning and Zoning Committee which recommended approval of the proposed amendment: "While the land use issue is now moot, re–adoption of this amendment would provide for City Council confirmation of the decision made on the November 6, 1984 initiative ballot."

In reviewing the City Council Ordinance at issue in this case, we bear in mind the general rule that the courts will not and cannot inquire into motives of members of a municipal governing body or other zoning authority where the validity of zoning plans or laws is under considera-tion. 8A McQuillin, *Municipal Corporations* § 25.278, at 386 (3d ed.); *County Council for Montgomery County v. District Land Corp.*, 274 Md. 691, 705, 337 A.2d 712, 720 (1975); *McCarthy v. City of Manhattan Beach*, 41 Cal. 2d 879, 885–86, 264 P.2d 932, 940 (1953). We have recog-nized that the enactment of and amendments to development plans consti-tute legislative acts of the City Council, *Kailua Community Council v. City & County*, 60 Haw. 428, 432, 591 P.2d 602, 605 (1979), and as such they are entitled to a presumption of validity. *See State v. Spencer*, 68 Haw. 622, 624, 725 P.2d 799, 800 (1986). The challenger of the ordinance bears the burden of showing that it is arbitrary, unreasonable or invalid. *See State v. Diamond Motors*, 50 Haw. 33, 38–39, 429 P.2d 825, 829 (1962); *Bird v. City of Colo. Springs*, 176 Colo. 32, 35, 489 P.2d 324, 325 (1971); *Mountcrest Estates, Inc. v. Mayor and Township Comm.*, 96 N.J. Super. 149, 154, 232 A.2d 674, 677 (1967).

A careful review of the record indicates that the City Council Ordi-nance was not merely a "confirmation" of the Initiative Ordinance. The Council initiated independent action to amend the development plan in June of 1984, well before the general election in November. The Council complied with the procedures set forth in the Charter for amendment of general and development plans. The Findings of Fact attached to the Or-dinance state explicitly that studies were made, public hearings were held, field investigations were conducted, public testimony was considered, and findings were made that each amendment was consistent with the de-velopment plan and General Plan.[10]

---

[10] Finding of Fact Number 17 to Bill No. 37 reads as follows: "On May 22, 1985, the Council, in the proper exercise of its legislative power, finding that each

On March 19, 1985, the Council Committee on Planning and Zoning held a public hearing on the proposed ordinance. In April, the Committee conducted public decision making sessions for each individual proposed amendment to the plan. The proposed amendment was reviewed by the Chief Planning Officer in accordance with the Charter requirement that, in preparing development plans, "the chief planning officer shall consult with persons responsible for the development activities of other governmental and private organizations operating within the city." Charter § 5–4ll(3).[11] We find, therefore, that the City Council Ordinance did not violate the requirement of HRS § 226–61(a) that "[t]he county development plans shall be formulated with input from state and county agencies as well as the general public."

HRS § 226–61(a) further requires that: "The formulation, amendment, and implementation of county general plans or development plans shall take into consideration statewide objectives, policies, and programs stipulated in state functional plans approved in consonance with this chapter." The state functional plans are broad policy guidelines providing a framework for state and county planning and do not constitute legal mandates, nor legal standards of performance. *See* Hse. Conf. Comm. Rep. No. 35–84, 1984 House Journal, at 732–33. The Hawaii legislature made this clear in 1984, when it amended the State Planning Act to eliminate the requirements of conformance by the counties with the Act. HRS § 226–61(a) was amended so that the counties would only have to "consider" the functional plans.[12] Hse. Conf. Comm. Rep. No. 35–84, *supra*.

---

amendment to the Primary Urban Center Development Plan . . . is consistent with the policies and provisions of the Primary Urban Center Development Plan and the objectives and policies of the General Plan, approved for third reading by affirmative vote of at least two–thirds of its entire membership. Bill No. 37, Draft No. 2[.]"

[11] Finding of Fact No. 1 to Bill No. 37 states:

In accordance with Sections 5–403(a), 5–403(b), and 5–4ll, Revised Charter, the Department of General Planning has conducted its 1984–85 year–long annual review process, which included consultation with governmental and private agencies involved with or related to development activities and with residents of the areas affected by the proposed amendments[.]

[12] Prior to 1984, the language of HRS § 226–61(a) required that county plan amendments "utilize as guidelines" the state functional plans.

The Conference Committee Report emphasized that county planning bodies should make every effort to "work within the framework provided by the respective county general plans, development plans, and state functional plans in their formulation, amendment and implementation." *Id.*

The record reveals that the City Council Ordinance was clearly enacted "within the framework" of the functional plans. One of the policies of the State Housing Functional Plan is to "[i]ncrease homeownership and rental opportunities and choices in terms of quality, location, cost, densities, style, and size of housing." Another policy is to "[s]timulate and promote feasible approaches that increase housing choices for low–income, moderate–income and gap group households." The City Council's amendment of the development plan to redesignate the Date–Laau Tract to "Low Density Apartment" is consistent with these State policies. We find, therefore, that the City Council Ordinance does not violate the requirement of Chapter 226 that the state functional plans be "take[n] into consideration" by the counties in formulating and amending their development plans.

Finally, Lum Yip Kee contends that the Council violated HRS § 226–61(b) which requires that "[c]ounty general plans shall be formulated on the basis of sound rationale, data, analyses, and input from state and county agencies and the general public, and contain objectives and policies as required by the charter of each county." The Ordinance at issue in this case involves the amendment of a development plan, and not the formulation of a general plan. Nevertheless, as discussed above, the record reflects that studies were made, public hearings were held, field investigations were conducted, public testimony was considered, and findings were made. Therefore, we find that the City Council Ordinance was "formulated on the basis of sound rationale, data, analyses, and input from state and county agencies and the general public."

As every legislative act is entitled to a presumption of validity, we hold that Lum Yip Kee has not met its burden of proving that the City Council failed to comply with the requirements of state law in redesignating the Date–Laau Tract as "Low Density Apartment." Accordingly, the lower court did not err in finding the ordinance valid as a matter of law.

**B.**

Lum Yip Kee also challenges the validity of the City Council Ordinance on the basis that it was illegal "spot zoning." Lum Yip Kee contends that the Council singled out the Date–Laau Tract for a use different from and inconsistent with the surrounding area by designating it as "Low Density Apartment."

As established by the United States Supreme Court in *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S. Ct. 114, 71 L. Ed. 303 (1926), the power to zone is an exercise of the police power of a municipality. The exercise of such power must bear a reasonable relation to, or be reasonably necessary for, the public health, safety, morals or general welfare. Zoning which is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare" is not within the municipality's police power and will be held invalid under the fourteenth amendment of the United States Constitution. *Id.* at 395, 47 S. Ct. at 121, 71 L. Ed. at 314. We also recognize that the zoning power of the counties is limited to those regulations that are reasonable in the exercise of the police power. "Spot zoning" is outside the scope of this power.

We have defined "spot zoning" as "an arbitrary zoning action by which a small area within a large area is singled out and specially zoned for a use classification different from and inconsistent with the classification of the surrounding area and not in accord with [a] comprehensive plan." *Life of the Land v. City Council*, 61 Haw. 390, 429, 606 P.2d 866, 890 (1980).

Applying the principles of "spot–zoning" to the development plan amendment in this case, we conclude that the ordinance did not constitute "spot zoning." [13] Lum Yip Kee has not shown that the City Council's amendment of the Development Plan was an "arbitrary" action. As noted above, the Council received input from the public and other agencies, and made findings that the amendment was consistent with the development plan and the General Plan. The City considers all such amendments as

---

[13] We note at the outset that the ordinance challenged by Lum Yip Kee is not a "zoning" ordinance. Rather, the ordinance in question amended the development plan to change the land use designation from "High Density Apartment" to "Low Density Apartment." The record does not indicate whether the Date–Laau

part of a single annual review process. This process requires the City to consider the cumulative effect of a group of plan amendments and thus helps assure that piecemeal changes do not undercut the plan. *See* D. Callies, *supra*, at 27; Mandelker, *Land Use Law* § 6.30 (1988). The burden of demonstrating that a particular zoning amendment is "spot zoning" rests with the party attacking the ordinance. *Mesolella v. Providence*, 439 A.2d 1370, 1374 (R.I. 1982); *Raffia v. Zoning Bd. of Appeals*, 151 Conn. 484, 486, 199 A.2d 333, 335 (1964); 1 *American Law of Zoning* 3d § 5.22, at 404 (1986).[14] This is in accordance with the principle discussed previously that legislative acts of the Council are entitled to a presumption of validity, and the burden of proving invalidity rests upon the attacker. *Mountcrest Estates*, 232 A.2d at 677; *McCarthy*, 264 P.2d at 935.

Lum Yip Kee also has not shown that "Low Density Apartment" use is inconsistent with the area surrounding the Date–Laau Tract. The surrounding area is comprised of a variety of land uses. Parcels immediately adjacent to the Tract are designated "Medium Density Apartment," "High Density Apartment," and "Public Facility." The property designated "Public Facility" includes a school and a golf course, both of which are low density and open space in character. Low, medium and high density apartments all comprise residential apartment use. Thus, it cannot be said

---

Tract was subsequently downzoned to conform to "Low Density Apartment." However, the Development Plan Common Provisions provide

> that where the land use map designations or provisions of a development plan are more restrictive than applicable zoning ordinances, the department of land utilization shall within 90 days of the date of approval or amendment of the development plan prepare and submit to the planning commission such ordinances as are necessary to bring applicable zoning ordinances into conformance with the development plan. The planning commission shall forward its recommendations to the council within 45 days.

Revised Ordinances § 32–1.2(b). Under the Land Use Ordinance, the corresponding zoning district would be A–1 Low Density Apartment with a height limit of 30 feet. *Id.* § 21A–5.50–1.

[14] We decline to adopt the minority "change or mistake" rule urged by Lum Yip Kee. This rule creates a legal presumption favoring the validity of the original zoning ordinance and requires the proponents of a rezoning to show a mistake or a change in conditions justifying the rezoning. *See* 2 Rathkopf, *The Law of Planning and Zoning* § 28A–3 (1988).

that the "Low Density Apartment" designation is "inconsistent with the classification of the surrounding area." *Life of the Land, supra.*

Finally, Lum Yip Kee has not demonstrated that "Low Density Apartment" is not in accord with the comprehensive plan. The Council made findings that the development plan amendment was consistent with the objectives and policies of the County General Plan. The General Plan contains statements of the general social, economic, environmental, and design objectives to be achieved for the general welfare of the people. Charter § 5–408. One of the General Plan's objectives is "to provide decent housing for all the people at prices they can afford." Housing policies of the General Plan call for the maintenance and improvement of existing housing, the preservation of affordable housing, and the development of a variety of residential opportunities to people of different income levels. Preserving low density, moderately priced rental and cooperative apartments in the Primary Urban Center is consistent with these goals.

We conclude that the lower court was correct in ruling that the City Council Ordinance did not constitute "spot zoning."

## III.

We therefore affirm the lower court's ruling upholding the validity of the City Council Ordinance which amended the development plan to redesignate the Date–Laau Tract for "Low Density Apartment" use. Since we find that the City Council Ordinance is valid, the issue of the validity of the Initiative Ordinance, which also redesignated the Tract "Low Density Apartment," is moot.[15]

*Melvin Y. Kaneshige (Andrew V. Beaman and Leroy E. Colombe,* of counsel, Chun, Kerr & Dodd; and *Asa M. Akinaka* with him on the briefs) for Plaintiff–Appellant/Cross–Appellee Lum Yip Kee, Ltd.

---

[15] The Initiative Ordinance both amended the development plan to reclassify the Tract as "Low Density Apartment" and amended the zoning classification to "A–1 Apartment." The City Council Ordinance only amended the development plan to redesignate the Tract "Low Density Apartment" and did not downzone the Date–Laau Tract. The zoning issue is necessarily moot, however, because zoning is required to conform to the development plan. *See* Charter § 5–412(3); Revised Ordinances § 32–1.2(b). Thus, it would not be possible to rezone the Tract for "A–3" Apartment (high density use) after the development plan had been amended to "Low Density Apartment." Such a rezoning would be void.

*Jane H. Howell* (*Gary M. Yokoyama* on the cross–appeal opening brief), Deputy Corporation Counsels, for Defendant–Appellee/Cross–Appellant City and County of Honolulu.

*Chad K. Taniguchi* (*Corey Y. S. Park* with him on the brief, of counsel, Paul, Johnson & Alston) for Intervenor–Defendant–Appellee/Cross–Appellant The Save Date–Laau Committee.
On the Briefs
*Daniel R. Foley* and *Alan B. Burdick*, for Amicus Curiae Save Sandy Beach Initiative Coalition.
*R. Charles Bocken*, *Steven H. Levinson*, and *Robert H. Thomas*, of counsel, Damon, Key, Char & Bocken, for Amici Curiae Kaiser Hawaii Kai Development Co. & Kaiser Development Company.