No. 44,629

BURKE & McCAFFREY, INC., *Appellant,* v. THE CITY OF MERRIAM,
KANSAS, a Municipal Corporation, *Appellee.*

(424 P. 2d 483)

Opinion filed March 4, 1967.

*John T. Flannagan,* of Olathe, argued the cause, and *Howard E. Payne,*
*W. C. Jones, Robert P. Anderson, Keith Martin, H. Thomas Payne, John H.*
*Johntz, Jr.,* and *Edward M. Boyle,* all of Olathe, were with him on the brief
for the appellant.

*Louis A. Silks, Jr.,* of Merriam, argued the cause and was on the brief for
the appellee.

The opinion of the court was delivered by

HARMAN, C.: At issue here is the reasonableness of the action
of the governing body of the city of Merriam in refusing to approve
a proposed plat of a subdivision submitted to it pursuant to K. S. A.
12-705.

Appellant is a building corporation. It proposed to develop a
residential subdivision in the form of a cul-de-sac approximately
one thousand feet in length on property it owned between Sixty-
fifth and Sixty-seventh streets at the eastern edge of the city of
Merriam, a city of the second class. Appellant prepared and sub-
mitted to the city's planning commission a plat of its proposed sub-
division, to be known as Indian Gardens No. 2. The planning
commission approved the plat and forwarded it to the city council
The city council considered the plat at several meetings and even-
tually, on November 16, 1964, voted unanimously to disapprove it.
This action was all taken pursuant to then existing law, K. S. A.
12-705 (now substantially amended by Laws, 1965, Chapter 131).

Appellant then filed this action in mandamus in the district court
of Johnson county alleging in its petition that the city's action was

unreasonable and unlawful and asking that the city be directed to approve the plat. The city answered alleging its action was reasonable and lawful.

At the trial the parties stipulated that the minutes of the meetings of the city council at which the plat was considered should be admitted in evidence along with the plat and certain sketches, maps and photographs. One of these exhibits, a scale drawing of the preliminary plat and surrounding area, is appended. Also, appellant offered the testimony of one of the developers, the county engineer of Johnson county, and that of a consulting engineer employed by appellant for the purpose of preparing the plat in question.

At the conclusion of appellant's presentation of evidence, the city moved to dismiss the action on the ground that upon the facts and the law appellant had shown no right to relief. The motion was sustained and judgment was rendered in favor of the city. This appeal followed.

Appellant's numerous contentions that the city acted unreasonably and unlawfully may be summarized and discussed in three parts.

First, appellant points out that K. S. A. 12-705 provides that, before exercising its powers, a city planning commission shall adopt regulations governing the subdivision of land within its jurisdiction. It appears that the city of Merriam had in its planning and zoning regulations only a single regulation pertaining to streets (Section 22) which, in addition to prescribing width of right-of-way and depth of paving, incorporated by reference minimum standards, plans and specifications recommended by the county engineer of Johnson county and filed in the office of the city clerk. The Johnson county engineer testified he had not adopted any minimum standards, plans and specifications which were on file in the city clerk's office. Inasmuch as the plat complied with Section 22 as to width of street, and there was no other regulation to be complied with and particularly none regulating the length of cul-de-sac streets, appellant argues the city was without authority to disapprove the plat on the basis of the length of the proposed cul-de-sac street, this being the principal ground of objection.

We do not think such a result follows. K. S. A. 12-705 does direct a city planning commission to adopt regulations. It further provides:

". . . Such regulations *may* provide for the proper area of streets in relation to other existing or planned streets and to the mapped plan for

adequate and convenient open spaces for traffic, utilities, access of fire-fighting apparatus, recreation, light, and air, and for the avoidance of congestion of population, including minimum width and area of lots." (Emphasis supplied.)

This statute is plainly directory. It declares broad policy but leaves details to administrative discretion. Certainly a planning commission could not be expected to prescribe regulations in advance to meet every conceivable situation which might be presented to it. It could not be expected to anticipate all the requests that could be made of it and to have regulations available covering all conditions precedent to approval (see *Hudson Oil Co. v. City of Wichita*, 195 Kan. 623, 396 P. 2d 271). Moreover, under K. S. A. 12-705 the function of the planning commission is advisory only, its authority being limited to a study of the facts and submission of its recommendations to the governing body wherein authority to take final action lies. Failure of the planning commission to have formal regulations as to the length of cul-de-sacs could not deprive the city council of its jurisdiction to take final action in the form of disapproval of the plat.

Next, appellant argues that the city of Merriam contains other cul-de-sac streets, and, more particularly, it recently approved a plat of a subdivision containing twenty-three building lots in cul-de-sac form called West Vernon Place Unit No. 2. From this appellant argues discrimination and arbitrary action in the disapproval of its plat. Reference to the map of the city received in evidence does disclose the existence of numerous cul-de-sac areas. Most if not all are much shorter in length than that in the proposed plat—with the exception of West Vernon Place Unit No. 2. This is comparable in length and design. The city points out, however, that as to the latter the situation is different, both as to contour of the terrain and as to possibility of access at the end of the cul-de-sac street. The record is silent as to terrain features of West Vernon Place but again, reference to the map discloses no streets are available for connection at the end of the cul-de-sac in West Vernon Place, the area being bounded by other subdivisions containing no interior streets. In the case at bar the evidence disclosed that appellant was in fact the owner of a lot seventy-four feet wide at the south end of the cul-de-sac, which lot was on Sixty-seventh street and could be used in connecting the subdivision with Sixty-seventh street. On the appended plat this lot is marked "P" lot. The possibility of extending Lowell Drive through this lot to connect with

Sixty-seventh street was the subject of considerable discussion at the various hearings before the planning commission and the city counsel. At these hearings, as found by the trial court, the appellant represented it did not own this land although it appears it did so own the lot and could eliminate the cul-de-sac by extending Lowell Drive through to Sixty-seventh street. In any event there appears to be sufficient difference between the proposed plat and that of West Vernon Place Unit No. 2 to allay any charge of discrimination in the handling of the former.

Finally, appellant urges the record shows that the city council abdicated its responsibility to the neighbors in the area and. disapproved the plat solely because of certain neighbors' objections. Some of the neighbors in the surrounding area did voice objections and one councilman did express his support of their views in forceful terms. But we do not think the record supports appellant's contention of delegation of authority by the council.

The council considered the plat at six different meetings. Some of the neighboring homeowners objected to its approval. They indicated they had sold a portion of the back part of their lots fronting on Craig Road for this development upon the representation that Lowell Drive would be extended through to Sixty-seventh street. They expressed concern over traffic and fire safety and pedestrian trespass on their property. The chief of the fire department filed a written report finding no objection to the plat; thereafter he stated orally he did not like a cul-de-sac in principle. The city engineer made a written report. In it he referred to standards set forth in the Mission Township Zoning Regulations which, although no longer in force, had served as a pattern for some problems. This document contained the following paragraph:

"Dead-End Streets: Except in unusual cases, no dead-end streets will be approved unless such dead-end streets are provided to connect with future streets in adjacent land, but cul-de-sacs may be permitted where the form or contour of the land makes it difficult to plat with connecting streets. Such cul-de-sacs shall provide proper access to all lots and shall generally not exceed four hundred feet in length, and a turnaround shall be provided at the closed end, with an outside radius of at least fifty feet. Except in unusual cases, cul-de-sacs will not be permitted where the turnaround is not clearly visible from the entrance to the street."

The engineer's report further stated that he concurred in the recommendation contained in the foregoing wherein cul-de-sacs are limited to 400 feet in length with a companion requirement of

clear visibility of the turnaround from the entrance to the street, and that the "submitted plat on Indian Gardens No. 2 is not in agreement with this recommendation." He also stated "the development would be vastly improved if a means of egress could be provided at its southern extremity."

At the trial of the mandamus action before the district court there was in addition to that which has already been stated, evidence that some homeowners preferred cul-de-sacs and that the cost of extending Lowell Drive to Sixty-seventh street would be about $12,000; there was also evidence that the initial plan provided for such an extension, and that a prime motive for the cul-de-sac design was based on economy.

The trial court specifically ruled there was no evidence adduced indicating unreasonable or arbitrary action. We think that ruling is correct as shown by the record. The city was concerned, and properly so, with laying out its streets in accordance with other existing or planned streets in the interest of public safety and welfare. Reasonable limitation of length of a dead-end street in a residential area is within the regulatory power of a city. Appellee's action here cannot be said to be unreasonable as a matter of law nor to infringe on any rights of appellant.

The judgment is affirmed.

APPROVED BY THE COURT.

## APPENDIX