ELIZABETH S. HALL, et al., Plaintiffs-Appellants, *v.*
CITY AND COUNTY OF HONOLULU, a municipal
corporation, Defendant-Appellee

*and*

FLORENCE TOYOSHIBA, et al., Plaintiffs-Appellants, *v.*
CITY AND COUNTY OF HONOLULU, a municipal
corporation, Defendant-Appellee

NO. 5467

JANUARY 16, 1975

RICHARDSON, C.J., KOBAYASHI, OGATA AND
MENOR, JJ., AND CIRCUIT JUDGE SHINTAKU
ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY KOBAYASHI, J.

Appellants appeal from the judgment of the trial court wherein the court held Ordinance No. 3443, amending the General Plan with regards to certain portion of Diamond Head area from residential and apartments to parks and recreation, as valid. We reverse.

The question is whether, in enacting Ordinance No. 3443,[1] the appellee observed the strict procedural requirements of the Charter of the City and County of Honolulu as construed by this court in *Dalton v. City and County of Honolulu*, 51 Haw. 400, 462 P.2d 199 (1969).

In brief the pertinent facts are:

1. The General Plan for the City and County of Honolulu was adopted by Ordinance No. 2443 effective May 7, 1964. The subject Diamond Head area was designated primarily residential with a small portion designated for apartment usage.

2. On May 4, 1967, the City Planning Commission held a public hearing to consider a proposal to adopt a detailed land use map and development plan for the Waikiki-Diamond Head area upon published notice so stating.

The detailed land use map showed no plans for a public park for the subject Diamond Head area.

3. On December 12, 1967, the City Council held a public hearing to consider an ordinance adopting a detailed land use plan and a development plan for the subject area, but the matter was taken under advisement by the Council.

4. On April 8, 1969, the mayor transmitted to the City Council the First Report and Recommendation of the

---

[1] Ordinance No. 3443, Section I, reads:

SECTION I. A portion of the General Plan for the City and County of Honolulu at Leahi, more commonly known as Diamond Head, is hereby amended by changing the land uses within the said area as follows:

1. Redesignating Residential areas totaling approximately 29.29 acres to Parks and Recreation; and

2. Redesignating Apartment areas totaling approximately 6.80 acres to Parks and Recreation,

all as shown on the map attached hereto marked Exhibit A, and by reference made a part hereof.

Mayor's Advisory Committee on Diamond Head, recommending the subject Diamond Head area be saved for park use; and further requested the Council for a moratorium on all building permits in the subject area and to immediately acquire the "Diamond Head Seas Condominium", belonging to certain of the appellants, for park purposes.

5. On May 27, 1969, the City Council requested of the Planning Department and Parks Department to confer with community groups "to formulate proposals for a development plan of the Waikiki-Diamond Head area to be presented to the City Council for approval within 8 months."

6. On June 17, 1969, the Planning Director and Parks Director forwarded to the City Council a communication entitled "Proposed Diamond Head-Waikiki Planning Program" which set forth text criteria for "study areas", "immediate objective", "long range objectives", "major study elements", "time of completion", "study participants" and "study procedures". The communication stated that "nine months will be required to accomplish the planning studies set forth herein."

7. On June 17, 1969, the City Council held a public hearing upon published notice which stated the following purpose:

[T]o hear comments on a proposal to institute a moratorium on all pending and requested building permits and zoning changes in the Diamond Head area, from Kapiolani Park to the Diamond Head lighthouse, *during the interim that a development plan* compatible with the land use for preserving Diamond Head as a national and State monument *is studied and formulated* by the Planning and Parks and Recreation Departments of the City and County of Honolulu and *submitted to Council on or about January 31, 1970*. (Emphasis added.)

8. On June 20, 1969, the City Council adopted Resolution No. 239 requesting the Planning Director and Planning Commission to submit their recommendation on the proposed change in the General Plan for the subject Diamond Head area by changing the land use designated from residential to park use.

9. On July 10, 1969, the Planning Director issued two memoranda to the Planning Commission, one of which recommended that the General Plan for the subject Diamond Head area be changed to parks and recreation and the other recommended that the General Plan for the subject area be changed from residential and apartment to parks and recreation.

10. On the same date, July 10, 1969, without any public hearing and without any discussion, the City Planning Commission recommended approval of the amendment to the General Plan.

11. On August 5, 1969, the City Council passed on third reading Bill No. 102 amending the General Plan for the subject Diamond Head area to park use by a vote of 5 to 3, with one member absent. Thereafter Bill No. 102 was immediately signed by the mayor as Ordinance No. 3443.

The following are the relevant portions of the Charter of the City and County of Honolulu as they existed in 1969 (prior to the amendment presently in effect):

*Section 5-505. Powers, duties and functions of the planning commission.* The planning commission shall:

. . . .

(b) Review the general plan and development plans and modifications thereof developed by the director. The commission shall transmit such plans with its recommendations thereon through the mayor to the council for its consideration and action. The commission shall recommend approval in whole or in part and with or without modifications or recommend rejection of such plans.

. . . .

*Section 5-509. General plan.* The general plan shall set forth the council's policy for the long-range, comprehensive physical development of the city. The general plan shall include a map of the city and shall contain a statement of development objectives, standards and principles with respect to the most desirable use of land

within the city for residential, recreational, agricultural, commercial, industrial and other purposes; the most desirable density of population in the several parts of the city; a system of principal thoroughfares, highways, streets and other public open spaces; the general location, relocation and improvement of public buildings; the general location and extent of public utilities and terminals, whether publicly or privately owned, for water, sewers, light, power, transit and other purposes; the extent and location of public housing projects; adequate drainage facilities and control; and such other matters as may, in the council's judgment, be beneficial to the city. The plan shall be based upon studies of physical, social, economic and governmental conditions and trends and shall be designed to assure the coordinated development of the city and to promote the general welfare and prosperity of its people.

*Section 5-510. Development Plan.* "Development plan" means a relatively detailed scheme for the placement or use of specific facilities within a defined area so as to insure the most beneficial use of such area in conjunction with the use of surrounding areas. A development plan is within the framework of and implements the general plan.

*Section 5-512. Adoption of the general plan and development plans.*

1. The council shall adopt the general plan or any development plan by ordinance. The general plan and all development plans shall be kept on file in the office of the planning department.

. . . .

4. *Any addition to or change* in the general plan proposed *by the council shall be referred* by resolution *to the planning director and the planning commission for their recommendation prior to final action by the council.* If the commission disapproves the proposed change or addition, or recommends a modification thereof, not accepted by the council, or fails to make its

report within the period of thirty days, the council may nevertheless adopt such addition or change, but only by the affirmative vote of at least two-thirds of its entire membership. (Emphasis added.) `

*Section 5-515. Public notice and public hearing.*

1. Prior to the adoption of the general plan and any development plan or the subdivision and zoning ordinances, or any amendments thereto, the council may hold a public hearing thereon at which interested persons shall be afforded a reasonable opportunity to be heard. Notice of the time and place of the hearing shall be published at least ten days prior to such hearing in a daily newspaper of general circulation in the city.

2. *Prior to recommending the adoption of* the general plan and any development plan or any subdivision or zoning ordinance or *any amendments thereto,* and prior to the adoption of subdivision regulations or any amendments thereto, *the planning commission shall hold a public hearing* thereon at which interested persons shall be afforded a reasonable opportunity to be heard. *Notice* of the time and place of the hearing shall be published at least ten days prior to such hearing in a daily newspaper of general circulation in the city. (Emphasis added.)

. . . .

On the above mentioned relevant facts and laws the trial court reached the following pertinent conclusions of law:

a. . . . [T]hat the studies of the D-H area were comprehensive and long-range. Although the studies did not necessarily reach the same conclusions, they were conducted over a considerable period of time and were projected far into the future. The Planning Director, the Planning Commission, and the City Council had access to these studies either by participating in the preparation of them, or by studying the same or having them explained to them. It may be that the Planning Director would have preferred to have nine more months to accomplish the planning studies set forth in his "Proposed Diamond Head-Waikiki Planning Program" submitted on June 17,

1969, but with the studies already completed and submitted and the three public hearings held this Court cannot conclude that the City Council acted hastily in enacting Ordinance No. 3443, although the entire chain of events was precipitated by the filing of the mandamus action on June 16, 1969.

    b. . . . [T]hat the amendment of the General Plan by Ordinance No. 3443 met the strict procedural hurdles of the Charter, and was therefore a valid amendment thereof.

We are of the opinion that the trial court has clearly erred in both conclusions of law.

1. The trial court has failed to take into consideration the important difference that exists between the General Plan and the Development Plan, and the difference between the General Plan and the Detailed Land Use Map.

Clearly, under Charter Section 5-509 (1969), the General Plan provides, *inter alia,* designated specific use of the land available within the City of Honolulu.

The Development Plan, under Charter Section 5-510 (1969), *merely* provides the *"detailed scheme for the placement or use of specific facilities* within a defined area so as to insure the most beneficial use of such area . . . . A *development plan* is *within the framework of and implements the general plan."* (Emphasis added.)

Evidence adduced at the trial shows that the Detailed Land Use Map *merely* provides in more detail the specific boundaries of *the various land use activities shown on the General Plan.*

2. The trial court further erred by equating studies on and public hearings of proposals for a development plan and/or of detailed land use map with the necessary, comprehensive and long-range studies of and public hearings on proposals for an amendment of the General Plan covering the subject area.

In the instant case the various studies introduced into evidence dealt with proposals of a development plan and/or of detailed land use map and not with studies of a proposition for the amendment of the General Plan.

The facts further show, as stated in the communication of the Planning Director and Parks Director, dated June 17, 1969, and the published notice to the public of the City Council for its hearing of June 17, 1969, that a time period of seven to nine months from June 17, 1969, was necessary for the preparation of a comprehensive and long-range study for the proper consideration of an amendment to the general plan of the subject area. No such study was ever submitted and considered before the enactment of the amendment to the General Plan.

3. The trial court further erred in concluding that the required public hearing was held prior to the enactment of the ordinance amending the General Plan. None of the three public hearings (the City Planning Commission hearing of May 4, 1967; the City Council hearing of December 12, 1967; and the City Council hearing of June 17, 1969) relied upon by the trial judge, as conforming to the procedural requirements, dealt with a proposal to amend the General Plan covering the subject area. The published notices of a public hearing limited the hearing, essentially, for adoption of a proposal or changes of a Development Plan and/or of a Detailed Land Use Map of the subject area. The hearings were not only stale but clearly failed to meet the required hearing for an amendment of the General Plan.

The Planning Commission at no time, after a duly noticed public hearing, submitted a recommendation to the City Council for an amendment of the General Plan covering the subject area.

We are of the opinion that Ordinance No. 3443 was enacted in violation of the essential procedural requirements of the applicable charter provisions as construed in *Dalton v. City and County of Honolulu, supra.*

Clearly, the necessary procedural requirements have not been met. The following requisites are missing:

1. An updated comprehensive and long-range study of the General Plan and of any amendments thereto;

2. A public hearing by the Planning Commission duly noticed to the public and so held for the amendment of the General Plan in question.

*Ted T. Tsukiyama (Keith J. Steiner, Padgett, Greeley, Marumoto and Steiner,* of counsel, with him on the brief) for plaintiffs-appellants.

*Robert M. Rothwell,* Deputy Corporation Counsel, for defendant-appellee.