KAILUA COMMUNITY COUNCIL, an unincorporated association, on behalf of its Members, Plaintiff-Appellee, *v.* CITY AND COUNTY OF HONOLULU, a municipal corporation, ROBERT W. WAY, Chief Planning Officer, GEORGE S. MORIGUCHI, Director of Land Utilization, and INTERNATIONAL TELEPHONE AND TELEGRAPH, a foreign corporation, Defendants-Appellants

NO. 5997

FEBRUARY 26, 1979

RICHARDSON, C.J., OGATA, MENOR AND KIDWELL, JJ.*

---

* Justice Kobayashi, who heard oral argument in this case, retired from the court on December 29, 1978. HRS § 602-11 (1978 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

OPINION OF THE COURT BY MENOR, J.

This case is before this court on an interlocutory appeal from an order granting partial summary judgment in favor of the plaintiff, Kailua Community Council, which is an unincorporated association whose members live, or own property, in Kailua, City and County of Honolulu. The judgment declared Ordinance No. 4237 and Ordinance No. 4238 of the City and County of Honolulu to be null and void. The defendants appeal.

On May 18, 1970, the chief planning officer (CPO) for the City and County of Honolulu issued a document entitled, "Instructions for Requesting Amendments to the General Plan for the City and County of Honolulu." These instructions included the statement that compliance therewith was not mandatory. The document outlined in detail the application procedures to be followed, and generally indicated the type of data needed by the planning department for the expeditious processing of applications to amend the general plan. These instructions were not formally adopted as "rules" within the meaning of the Hawaii Administrative Procedure Act (HAPA). *See* HRS Chapter 91.

On December 2, 1971, defendant-appellant International Telephone and Telegraph (ITT), through its authorized agent, submitted, in accordance with the "Instructions," an application to amend the City's General Plan and Detailed Land Use Map (DLUM). ITT requested that 9.1 acres of vacant land, identified by Tax Map Key Nos. 4-2-16-01 and 4-2-16-02, located in Kailua, City and County of Honolulu, be redesignated from "open space" to "commercial" and "low

density apartment.'' ITT proposed to develop moderately priced low-rise, multiple family residential housing on the property.

Following receipt of the application, the CPO wrote to the plaintiff-appellee advising it of ITT's application and soliciting its views and comments regarding the proposed change. He made the ITT application available to the appellee and provided it with other relevant information. The appellee responded in opposition to the application on February 1, 1972, and voiced its concern over the potential traffic problems such a project would engender, and further expressed the view that no consideration should be given to the application until a comprehensive plan for the Kailua area could be studied and adopted. It also questioned both the desirability and the marketability of the proposed dwelling units.

Subsequently, on March 7, 1973, the CPO forwarded the ITT application to the city planning commission, along with his recommendation for its approval. The CPO was of the opinion that the proposed development was consistent with the long range and comprehensive planning objectives of the city. On March 21, 1973, the planning commission, after public notice, held a public hearing on the ITT application. It then referred the matter to the city council. On May 15, 1973, the council's committee on planning and zoning recommended to the chairman of the city council that action on the application be deferred until a public information meeting could be held in Kailua to permit the various Kailua community associations to meet with ITT to discuss the application. Such a meeting, which was attended by the appellee's representatives, was held on June 7, 1973. On July 24, 1973, the city council held a public hearing on the application. The president of the appellee attended this hearing. On November 13, 1973, the city council enacted Ordinance No. 4237 and Ordinance No. 4238.

On January 7, 1974, the appellee filed suit in circuit court seeking to have the ordinances thus adopted declared null and void. After issue was joined, the appellee moved for partial summary judgment. In granting the motion, the circuit court held, in essence, that the office of the CPO was an

agency within the meaning of HRS § 91-1(1);[1] that the "Instructions" issued by the CPO were rules within the definition of HRS § 91-1(4);[2] that the "Instructions" were required to be adopted pursuant to the provisions of HRS §§ 91-3, 91-4, and 91-5; and that inasmuch as no valid rules had been adopted under which ITT's application could properly be processed, "any recommendation of the [CPO] concerning it to the [planning commission] or the [city] council was invalid and hence, Ordinance 4237 and 4238 were null and void."

The determinative issue in this case is, whether the CPO, in processing applications for amendments or revisions to the general plan or development plans of the city, was subject to the provisions of the Hawaii Administrative Procedure Act. HRS Chapter 91. We agree with the defendants-appellants that in these situations the HAPA is not applicable to the CPO.

Where the CPO's actions are determinative of public or private rights, he may be required to conform to the provisions of the HAPA. *Aguiar v. Hawaii Housing Authority,* 55 Haw. 478, 522 P.2d 1255 (1974); *E. Diamond Head Ass'n. v. Zoning Bd.,* 52 Haw. 518, 479 P.2d 796 (1971); *compare, Doe v. Chang,* 58 Haw. 94, 564 P.2d 1271 (1977); *Holdman v. Olim,* 59 Haw. 346, 581 P.2d 1164 (1978). In this area of municipal planning, however, the CPO and the department of general planning are not only charged with performing duties assigned to the executive branch, which are primarily administrative in nature, *see, e.g., Akahane v. Fasi,* 58 Haw. 74, 565

---

[1] HRS §91-1(1) provides:

(1) "Agency" means each state or county board, commission, department, or officer authorized by law to make rules or to adjudicate contested cases, except those in the legislative or judicial branches.

[2] HRS § 91-1(4) provides:

(4) "Rule" means each agency statement of general or particular applicability and future effect that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency. The term does not include regulations concerning only the internal management of an agency and not affecting private rights of or procedures available to the public, nor does the term include declaratory rulings issued pursuant to section 91-8, nor intra-agency memoranda.

P.2d 552 (1977), but also with duties intimately connected with the enactment of municipal legislation affecting the general plan and development plans of the city.

Proposed revisions or amendments may originate from the office of the CPO or they may be initiated by resolution of the city council.[3] *See* Revised Charter of the City and County of Honolulu [R.C.H.], §§ 5-412, 5-413 (1973). Where the CPO initiates the proposal, either sua sponte or at the request of a member of the public, the proposal is thereafter referred to the planning commission for its review and recommendations. R.C.H. §§ 5-406, 5-413 (1973). It then proceeds to the city council for its legislative action. *Id.* Or the city council, either sua sponte or at the request of a member of the public, may itself propose the amendment or revision by resolution. R.C.H. § 5-412 (1973). In the latter case, such amendment or revision is referred to the CPO and the planning commission, and is processed in the same manner as if originally proposed by the CPO. *Id.* But by whichever method the amendatory process is triggered, the final operative act giving legal effect to the proposal is the legislative action of the city council. The City Charter vests in the city council sole legislative power in municipal affairs. R.C.H. § 3-101 (1973). It also requires that revisions to the general plan be effectuated by council resolution and amendments to the development plans by ordinance. R.C.H. § 5-412 (1973). Thus, whether amendments or revisions are to be made is within the absolute discretion of the city council in the exercise of its legislative function. Its actions on the proposals are the only acts declarative of and affecting the interests of the public.

---

[3] Thus, members of the public desiring a change in the general plan and development plans are assured of access to the legislative process. Moreover, § 2-2.3 of the CPO's "Instructions" explains that "[i]f following this review [of the application], approval is recommended, the planning director submits the request to the planning commission for authorization for a public hearing. If the planning director does not approve the request, the applicant will be notified and the application will be forwarded to the planning commission with a negative recommendation." Under these instructions, the CPO does not have final veto power over any application. Neither were they designed or intended to have the force and effect of law. Abramson v. Board of Regents. 56 Haw. 680, 548 P.2d 253 (1976).

The Charter, however, has established the CPO and the department of general planning as an essential cog in this legislative process. No amendatory resolution or ordinance may be adopted by the city council without the participation of the CPO and of the department. The Charter Commission, in assigning this legislatively connected function to an agency of the executive branch, was undoubtedly motivated by the desire to pool the resources and expertise of both branches of government in a matter so closely intertwined with the public welfare. To the extent, therefore, that revisions to the general and development plans are involved, the CPO and the department are required by the Charter to serve in a dual capacity. On the one hand, they are principally an executive agency charged with the administration of city planning; on the other hand, they perform a role for the city council closely analogous to that of a legislative committee. This dual role is not at all unusual. *See Jackson v. Village of Rapids City*, 16 Ill. App.3d 153, 305 N.E.2d 342 (1973); *Traders Develop. Corp. v. Zoning Board of Appeals*, 20 Ill. App.2d 383, 156 N.E.2d 274 (1959); *Village of Justice v. Jamieson*, 7 Ill. App.2d 113, 129 N.E.2d 269 (1955); *Washington Cty. Tax. A., Inc. v. Board of Cty. Com'rs.*, 269 Md. 454, 306 A.2d 539 (1973).

In fulfilling his responsibility in this legislative process, the CPO serves as the initial factfinder for the city council, and he is in that sense performing a function which a legislative committee would normally perform. He reviews applications for revisions and amendments, R.C.H. § 5-403 (1973), and makes his recommendations to the planning commission which in turn reviews the proposals and transmits its own recommendations to the city council. Throughout this process, the CPO and the planning commission are performing a purely advisory function. *Mememanu Woodlands Association v. Koga*, 56 Haw. 235, 533 P.2d 867 (1975); *Houston v. Board of City Com'rs. of City of Wichita*, 218 Kan. 323, 543 P.2d 1010 (1975). *See also* 1 Rathkopf, *The Law of Zoning and Planning*, 3d Ed., at 30-17 (1974); 1 Anderson, *American Law of Zoning* §4.10 2d Ed. (1976). To the extent

that they are so involved, the CPO and the department are not subject to the requirements of the HAPA. To hold otherwise would, by indirection, extend the application of the HAPA to the actions of the city council which by its terms the Act has excluded from its operation. HRS § 91-1(1).

We further find that the appellee was given every opportunity, at every step in this legislative process, to marshal its objections to the application. Following the filing of the application, the CPO promptly solicited the appellee's views and comments regarding the requested changes to the general plan and development plans. A public hearing was held by the planning commission before reaching a decision on the application and passing it on to the city council. An informational meeting between the developer and residents of the affected area was held in Kailua at the suggestion of a subcommittee of the city council. Thereafter, a public hearing was held by the city council before acting on the application and enacting Ordinance No. 4237 and Ordinance No. 4238. The appellee does not contend that the hearing procedures followed by the planning commission and the city council were anything other than as required by the City Charter.

The procedure by which the ordinances in question was processed and adopted was clearly in conformity with the provisions of the Charter and was consistent with our holdings in *Hall v. City and County of Honolulu*, 56 Haw. 121, 530 P.2d 737 (1975), and *Dalton v. City and County of Honolulu*, 51 Haw. 400, 462 P.2d 199 (1969) *reh. denied*, 51 Haw. 492. Under these circumstances, we are not disposed to extend the reach of these cases to the factual situation presently under consideration. In this respect, we are in essential agreement with analogous decisions in *Yahnel v. Bd. of Adjust. of James-burg*, 76 N.J. Super. 546, 185 A.2d 50 (1962), and *Burke & McCaffrey, Inc. v. City of Merriam*, 198 Kan. 325, 424 P.2d 483 (1967).

In *Yahnel*, the municipal board of adjustment had recommended, and the borough council had granted, a variance for the construction of a telephone company wire center in a residential zone. The plaintiffs contended that the granting of the variance was illegal by reason of the failure of the board to

adopt rules of procedure as required by law. In disposing of this contention, the court said:

> "Assuming without deciding that such direction is mandatory in nature, it would not necessarily follow that in the absence of such rules, all actions of the Board are nugatory. Plaintiffs have failed to show in what respect they were harmed by lack of such rules. From the record it is clear that plaintiffs had a full opportunity to present their case to the Zoning Board of Adjustment. The failure of the Board to adopt rules is held not to be destructive of the Board's recommendation of a variance." 185 A.2d at 52-3.

And in *Burke,* the court stated:

> "Moreover, under [the statute] the function of the planning commission is advisory only, its authority being limited to a study of the facts and submission of its recommendation to the governing body wherein authority to take final action lies. Failure of the planning commission to have formed regulations as to the length of cul-de-sacs could not deprive the city council of its jurisdiction to take final action in the form of disapproval of the plat." 424 P.2d at 485.

Reversed.

*Samuel P. King, Jr.,* Deputy Corporation Counsel for Defendant-Appellant, City and County.

*Willson C. Moore, Jr., (Conroy, Hamilton, Gibson, Nickelsen & Rush,* of counsel) for Defendant-Appellant, ITT.

*William F. Roos, Jr., (Carlsmith, Carlsmith, Wichman & Case,* of counsel) for Plaintiff-Appellee.