KAISER HAWAII KAI DEVELOPMENT COMPANY, a Nevada corporation, and KAISER DEVELOPMENT COMPANY, a California corporation, Plaintiffs–Appellees, and RICHARD LYMAN, JR., MATSUO TAKABUKI, MYRON B. THOMPSON, WILLIAM S. RICHARDSON, and HENRY H. PETERS, Trustees of the Kamehameha Schools/Bernice Pauahi Bishop Estate, Plaintiffs–Intervenors–Appellees, v. CITY AND COUNTY OF HONOLULU, a Hawaii municipal corporation; RAYMOND K. PUA, in his capacity as City Clerk for the City and County of Honolulu; and THE SAVE SANDY BEACH INITIATIVE COALITION, Defendants–Appellants

NO. 13286

(CIV. NO. 87–3143)

JUNE 21, 1989

NAKAMURA, ACTING C.J., HAYASHI, AND
WAKATSUKI, JJ., AND INTERMEDIATE COURT
OF APPEALS JUDGES, HEEN IN PLACE OF LUM, C.J.,
RECUSED, AND TANAKA IN PLACE OF
PADGETT, J., RECUSED

OPINION OF THE COURT BY WAKATSUKI, J.

In this case, the majority of this court filed an order affirming the decision of the circuit court on May 17, 1989. The basis of the affirmance is the following opinion.

I.

Bishop Estate is the fee owner of a tract of land divided into two segments, which are designated as Golf Course 5 and Golf Course 6, in the Kalama Valley area in East Honolulu. Kaiser Hawaii Kai Development Company (Kaiser) has the legal right to possess and develop this land. This land has been zoned for residential use since 1954. A portion of the land falls within the Shoreline Management Area. *See* Chapter 205A, Hawaii Revised Statutes (HRS) (1985 & Supp. 1988). Before Kaiser could proceed with its planned residential housing project on this tract, it had to

obtain a special management area use permit from the City and County of Honolulu (City).

### A.

The permit application drew the attention of a number of citizens who protested that the housing development would severely impact the beach area known as Sandy Beach which is on the opposite side of Kalanianaole Highway from the proposed development area. The citizens voiced their concerns relative to the housing development in a series of public meetings and hearings before the City Department of Land Utilization, the Hawaii Kai Neighborhood Board, and the City Council. But Kaiser was eventually granted a permit to proceed with its plan for the housing development.

A group of citizens formed The Save Sandy Beach Coalition (Coalition) to prevent the housing development. The Coalition circulated an initiative petition which proposed to amend the designation of the tract from residential to preservation on both the City's land use development plan and zoning maps. The Coalition, in accordance with Article III, Chapter 4 of the Revised Charter of the City and County of Honolulu 1973 (1984 ed.) (Charter), gathered the necessary signatures to place the initiative proposals on the ballot for vote by the electorate of the City on November 8, 1988.

### B.

Kaiser, by initiating this suit prior to the election, sought, *inter alia*, a declaration that the initiative process was an improper procedure to downzone the tract of land from residential use to preservation. Bishop Estate joined with Kaiser. The circuit court agreed with Kaiser and Bishop Estate, and thereby enjoined the placement of the initiative proposals on the ballot.

This court, upon motion by the Coalition, stayed the circuit court's injunction, thus permitting a vote on the initiative proposals on the November 8, 1988 general election ballot. The order staying the injunction expressly noted that the court did not determine the merits of the appeal.

At the general election, the initiative proposals were approved by the electorate.

## II.

The issue before this court is whether the initiative proposals adopted by the electorate of the City on November 8, 1988 validly amended the land use development plan and zoning maps of the City. We answer in the negative.

In view of our holding herein, we deem it unnecessary to determine the issue of whether appellees' constitutional rights to due process have been violated by the initiative process.

## A.

The duty of this court in interpreting statutes is to ascertain and give effect to the intention of the legislature. *Reefshare, Ltd. v. Nagata*, 70 Haw. 93, 100, 762 P.2d 169, 174 (1988). In view of legislative history, it is abundantly clear that the legislature in its wisdom established a public policy of not effectuating land use zoning through the initiative process.[1]

The counties of our state derive their zoning powers from HRS § 46–4(a) (Supp. 1988), referred to as the Zoning Enabling Act. It states in pertinent part:

> Zoning in all counties shall be accomplished within the framework of a long range, comprehensive general plan prepared or being prepared to guide the overall future development of the county. *Zoning shall be one of the tools available to the county to put the general plan into effect in an orderly manner.*
>
> . . . .
>
> The powers granted herein shall be liberally construed in favor of the county exercising them, and *in such a manner as to promote the orderly development of each county or city and*

---

[1] In this opinion, unless the context clearly indicates otherwise, "zoning by initiative," or such similar terminology, refers to amendments to both the detailed county development plans and zoning maps effected through the initiative process.

*county in accord with a long range, comprehensive, general plan, and to insure the greatest benefit for the State as a whole.* (Emphasis added.)

The language of the Zoning Enabling Act clearly indicates the legislature's emphasis on comprehensive planning for reasoned and orderly land use development. This emphasis on planning was reiterated in the statement of policy adopted as part of the legislation enacting the Zoning Enabling Act. There, the legislature stated:

> The pressure of a rapidly increasing population in the Territory of Hawaii requires an orderly economic growth within the various counties and the conservation and development of all natural resources. Adequate controls must be established, maintained and enforced by responsible agencies of government to reduce waste and put all of our limited land area, and the resources found thereon, to their most beneficial use. [ ¶ ] It is the intent and purpose of the legislature, by means of zoning ordinances and regulations enacted by or under this act, and in accord with a long range, comprehensive general plan, to promote the health, safety, convenience, order, welfare and prosperity of the present and future inhabitants of the Territory.

§ 1, Act 234, 1957 Session Laws of Hawaii.

### B.

Zoning by initiative is inconsistent with the goal of long range comprehensive planning, and "[i]t seems unlikely that the Legislature intended the possible frustration of comprehensive zoning through the initiative process." *Smith v. Township of Livingston*, 106 N.J. Super. 444, 457, 256 A.2d 85, 92 (1969).

In *Township of Sparta v. Spillane*, 125 N.J. Super. 519, 525–526, 312 A.2d 154, 157 (1973), a New Jersey Superior Court stated:

> Zoning is intended to be accomplished in accordance with a comprehensive plan and should reflect both present and prospective needs of the community. [ ] Among other things, the social, economic, and physical characteristics of the community should be considered. The achievement of these goals' might well be jeopardized by piecemeal attacks on the zoning ordinances if referenda were permissible for review of any

amendment. Sporadic attacks on a municipality's comprehensive plan would tend to fragment zoning without any overriding concept. That concept should not be discarded because planning boards and governing bodies may not always have acted in the best interest of the public and may not, in every case, have demonstrated the expertise which they might be expected to develop. (Citations omitted.)

Similarly, the Washington Supreme Court stated in *Leonard v. City of Bothell*, 87 Wash. 2d 847, 852, 557 P.2d 1306, 1309–1310 (1976) (quoting *Kelley v. John*, 162 Neb. 319, 323–324, 75 N.W.2d 713, 716 (1956)):

The uniformity required in the proper administration of a zoning ordinance could be wholly destroyed by referendum. A single decision by the electors by referendum could well destroy the very purpose of zoning where such decision was in conflict with the general scheme fixing the uses of property in designated areas . . . . It would permit the electors by referendum to change, delay, and defeat the real purposes of the comprehensive zoning ordinance by creating the chaotic situation such ordinance was designed to prevent.

We are cognizant that both *Spillane* and *Leonard* involved referenda. Nevertheless, we agree with the reasoning and statements made by the respective courts as applied to the process of zoning by initiative.

Our reliance on these referenda cases may provoke the argument that this court implicitly approved of zoning by referendum in *County of Kauai v. Pacific Standard Life Ins. Co.*, 65 Haw. 318, 653 P.2d 766 (1982), commonly referred to as the Nukolii case, and that zoning by initiative should likewise be approved. In the Nukolii case, the voters of the County of Kauai repealed a zoning ordinance by referendum vote. This Court in that case quoted some language from *City of Eastlake v. Forest City Enters., Inc.*, 426 U.S. 668 (1976), *see* footnote 4, *infra*, which may intimate that charter provisions providing for referenda are superior to conflicting state statutes, *see* 65 Haw. at 323–324, 653 P.2d at 771–772. But the court in the Nukolii case was not faced with the issue of whether zoning by referendum is permissible in light of HRS § 46–4(a). We, therefore, hold that the Nukolii case is inapposite.

## C.

In 1957, when the Zoning Enabling Act was enacted in substantially the same form that it exists today, initiative was not available at either the state or local government levels. Initiative at the county government level was unknown until the adoption of county charters in 1968. (Initiative was not available in the City and County of Honolulu until 1982.) Therefore, it is reasonable to conclude that the legislature did not contemplate zoning through the initiative process in enacting the Zoning Enabling Act. If the legislature intended otherwise, it would have so legislated. (*Cf. Associated Home Builders v. City of Livermore*, 18 Cal. 3d 582, 135 Cal. Rptr. 41, 557 P.2d 473 (1976), where, in light of a state constitutional provision providing for initiative, the court reasoned that if the legislature intended to exclude zoning from initiative power, it would have so legislated.)

Since 1957, there has been no legislation enacted by the legislature to indicate a change of intent relative to zoning proposals through the initiative process. In reaffirming its aim of having long range comprehensive land use planning by the state and counties, the legislature enacted the State General Plan, HRS chapter 226, in 1978.[2] County general plans under chapter 226 are defined as comprehensive long–range plans. HRS § 226–2 (Supp. 1988). Those county general plans and the more detailed development plans are to be

---

[2] HRS § 226–1 (Supp. 1988) clearly establishes the legislature's concern for comprehensive long range planning. It states:

**Findings and purpose.** The legislature finds that there is a need to improve the planning process in this State, to increase the effectiveness of government and private actions, to improve coordination among different agencies and levels of government, to provide for wise use of Hawaii's resources and to guide the· future development of the State.

The purpose of this chapter is to set forth the Hawaii state plan that shall serve as a guide for the future long–range development of the State; identify the goals, objectives, policies, and priorities for the State; provide a basis for determining priorities and allocating limited resources, such as public funds, services, human resources, land, energy, water, and other resources; improve coordination of federal, state, and county plans, policies, programs, projects, and regulatory activities; and to establish a system for plan formulation and program coordination to provide for an integration of all major state, and county activities.

(1) formulated with input from the state and county agencies as well as the general public, (2) take into consideration the state functional plans, and (3) be formulated on the basis of sound rationale, data, analyses, and input from state and county agencies and the general public.

*Lum Yip Kee, Ltd. v. City and County*, 70 Haw. 179, 186, 767 P.2d 815, 820 (1989).

Moreover, the concept of legislation by initiative was debated and rejected at the Constitutional Conventions of 1950, 1968 and 1978. *See* I Proceedings of the Constitutional Convention of Hawaii of 1950 at 182–189; II Proceedings of the Constitutional Convention of Hawaii of 1950 at 744–780; I Proceedings of the Constitutional Convention of Hawaii of 1968 at 210–211; II Proceedings of the Constitutional Convention of Hawaii of 1968 at 520–523; I Proceedings of the Constitutional Convention of Hawaii of 1978 at 371–403, and II Proceedings of the Constitutional Convention of Hawaii of 1978 at 813–837.

## D.

This court is mindful that there are jurisdictions which have upheld zoning by initiative despite the existence of laws calling for comprehensive plans for land use development, but in each of those jurisdictions there exists constitutional or statutory provisions reserving to the electorate the power of initiative and/or referendum.[3] [4] We note that the cases

---

[3] Appellants refer to numerous cases from California and Ohio. In both those states' constitutions, the people have reserved to themselves the power of initiative. The same is true for Colorado, thus rendering *Margolis v. District Court*, 43 Colo. App. 480, 638 P.2d 297 (Colo. 1981), inapposite. *City of Coral Gables v. Carmichael*, 256 So. 2d 404 (Fla. Dist. Ct. App. 1972), *cert. dismissed*, 268 So. 2d 1 (Fla. 1972), and *State ex rel. Hunziker v. Pulliam*, 168 Okla. 632, 37 P.2d 417 (1934), involved referenda in states where referendum is provided for in the state constitution. *Denney v. City of Duluth*, 295 Minn. 22, 202 N.W.2d 892 (1972), is readily explained by the fact that by state statute, Minnesota provides for municipal referenda.

[4] In *City of Eastlake v. Forest City Enters., Inc.*, 426 U.S. 668 (1976), the United States Supreme Court held that the enactment of zoning changes through referendum does not violate due process under the federal constitution. Thus, referendum could be applied to zoning changes since the power of referendum is reserved to the people of Ohio in its constitution.

cited by appellants are silent with respect to whether zoning by initiative furthers the goal of long range comprehensive planning for land use development.

III.

Appellant City contends that the Charter provision which permits zoning by initiative[5] is superior to contrary state statute. We disagree.

Article VIII, section 2 of our state constitution, in pertinent part, provides:

> Each political subdivision shall have the power to frame and adopt a charter for its own self–government within such limits and under such procedures as may be provided by general law. Such procedures, however, shall not require the approval of a charter by a legislative body.
>
> Charter provisions with respect to a political subdivision's executive, legislative and administrative structure and

----

[5] Sections 3–401 and 3–402, Article III, Chapter 4 of the Charter provides:

**Section 3–401. Declaration—**

1. **Power.** The power of electors to propose and adopt ordinances shall be the initiative power.

2. **Limitation.** The initiative power shall not extend to any ordinance authorizing or repealing the levy of taxes, the appropriation of money, the issuance of bonds, the salaries of county employees or officers, or any matter governed by collective bargaining contracts.

**Section 3–402. Procedure for Enactment and Adoption—**

1. **Petition.** An ordinance may be proposed by petition, signed by qualified electors equal in number to at least ten percent of the entire vote cast for mayor in the last preceding mayoral election.

2. **Form of Petition.** Each elector signing such petition shall add to the signature, the elector's printed name, residence and the date of signing.

3. **Affidavit on Petition.** Signatures may be on separate sheets, but each sheet shall have appended to it the affidavit of some person, not necessarily a signer of the petition, that, to the best of the affiant's knowledge and belief, the persons whose signatures appear on the sheet are qualified electors of the city, that they signed with the full knowledge of the contents of the petition and that their residences are correctly given.

4. **Proposed Ordinance.** Such petition shall set forth the proposed ordinance, or a draft of the proposed ordinance may be attached and made part of such petition.

organization shall be superior to statutory provisions, subject to the authority of the legislature to enact general laws allocating and reallocating powers and functions.

Section 6 of the same article further states:

This article shall not limit the power of the legislature to enact laws of statewide concern.

Neither of the appellants contend that the need for comprehensive long range planning for orderly land use development is merely a local, and not a statewide concern. The legislature clearly expressed concern for orderly and coordinated development within and between the counties when it adopted both the Zoning Enabling Act in 1957 and the Hawaii State Planning Act in 1978. *See supra* at p. 4 and footnote 2.

The City argues that although HRS § 46–4(a) authorizes the City to enact zoning ordinances, the manner in which such ordinances are enacted—by the City Council or through initiative—is a matter of "legislative . . . structure and organization." Therefore, pursuant to the state constitution, state statutes which dictate the process by which zoning ordinances are enacted are not superior to charter provisions which permit initiative. We disagree.

The thrust of HRS § 46–4(a) is not to dictate the manner in which zoning ordinances are promulgated, but to assure that, however enacted, those ordinances comport with that long–range general plan, "and to insure the greatest benefit for the State as a whole." *Id.* We hold, therefore, that HRS § 46–4(a) does not relate to the City's "executive, legislative and administrative structure and organization." Consequently, the statute is superior to the Charter's provision and, for the reason that it is inconsistent with the purpose of HRS § 46–4(a), zoning by initiative is impermissible.

## IV.

In view of legislative history and clear legislative intent, we declare that the amendments which downzoned the tract of land designated as Golf Course 5 and Golf Course 6 from residential to preservation through the initiative process are invalid.

*Daniel R. Foley* (*Alan B. Burdick* with him on the briefs) for Appellant–Defendant The Save Sandy Beach Initiative Coalition.

*Jane H. Howell*, Deputy Corporation Counsel, for Appellants–Defendants City and County of Honolulu and Raymond K. Pua.

*Kenneth Kupchak* (*Robert H. Thomas, R. Charles Bocken, Steven H. Levinson* and *Kamala J. Larsen* with him on the briefs of Damon, Key, Char & Bocken) for plaintiffs–appellees.

*C. Michael Hare* (*Gail M. Tamashiro* and *Constance C. Arvis* with him on the briefs of Cades, Schutte, Fleming & Wright) for appellees–plaintiffs–intervenors.

## DISSENTING OPINION OF NAKAMURA, J.

When the Supreme Court of Hawaii divests the people of the City and County of Honolulu of a right granted under the City's charter, it owes them a logical explanation for the action.[1] The opinion of the majority, however, does not tell us exactly why the employment of a process designed to give the people a voice on important questions of policy is per se incompatible with a statutory requirement that zoning "shall be accomplished [by ordinance] within the framework of a long–range, comprehensive general plan prepared . . . to guide the overall future development of the county." HRS § 46–4. Rather than a reasoned exegesis of the relevant provisions of HRS § 46–4, the opinion offers the fears of the majority that the objectives of planning would be jeopardized if the people were given the opportunity to effect zoning changes through the process. Because I neither share the majority's distrust of democracy nor subscribe to the notion that political decisions rendered directly by the electorate invariably are devoid of civic virtue, a fair reading of HRS § 46–4 reveals it does not forbid zoning amendments by initiative, and zoning amendments are subject to judicial review for consistency with general plans, I dissent.

---

[1] One of the major functions of any system of law is to assure its own acceptance in the society it governs, and this is part of the job of each judicial opinion. Law that is rejected by the people it undertakes to control, or that is received by them with doubts and misgivings, is not good law, and may not even be accepted as law at all. To a great extent the validity of law for a people depends on their confidence in it.
Leflar, *Some Observations Concerning Judicial Opinions*, 61 Colum. L. Rev. 810, 812 (1961).

## I.

In the majority's view, "[t]he issue before this court is whether the initiative proposals adopted by the electorate of the City on November 8, 1988 validly amended the land use development plan and zoning maps of the City." The orders of the circuit court from which appeals were taken, however, are dated April 15, 1988, August 9, 1988, and September 2, 1988. The primary order on appeal is entitled Order Granting in Part and Denying in Part Plaintiffs' Motion for Judgment on the Pleadings and Denying Save Sandy Beach Initiative Coalition's Motion for Dismissal or Summary Judgment and dated April 15, 1988. The issue, therefore, is whether the trial court erred or not in deciding on the basis of the pleadings that HRS § 46-4 "vests zoning power within the City and County of Honolulu exclusively in the City Council . . . , which is required to accomplish zoning changes within the framework of a long-range comprehensive general plan," and awarding judgment to the appellees.

### A.

The majority begins its discussion of the issue on appeal by reiterating the precept that "[t]he duty of this court in interpreting statutes is to ascertain and give effect to the intention of the legislature." This is followed immediately by the conclusion that "[i]n view of legislative history, it is *abundantly clear* that the legislature in its wisdom established a public policy of not effectuating land use zoning through the initiative process." (Emphasis added). Having read what is proffered thereafter as proof of abundant clarity of intent I cannot, even after viewing HRS § 46-4 and its legislative history in a light most favorable to the cause of legislative wisdom, ascribe such prescience to the legislature. For HRS § 46-4 does not even mention "initiative" or "referendum," there is nothing therein from which it may be inferred that zoning amendments by initiative are interdicted, and the history only confirms that the plain wording of the section accurately reflects legislative intention, which simply is to have zoning "accomplished [by ordinance] within the framework of a long range comprehensive general plan."

## B.

The opinion then cites two decisions issued by the Superior Court of New Jersey and one issued by the Supreme Court of Washington, proclaiming these cases support the reasoning of the majority and quoting dicta selectively to buttress its theme that "initiative is inconsistent with the goal of long range comprehensive planning." But even a cursory reading discloses they cannot serve as precedent or case law to guide the resolution of the issue at hand.

The New Jersey cases arose from the employment of initiative and referendum by the townships of Sparta and Spillane respectively in amending their zoning ordinances. Although a statute permitted municipalities to adopt either process as a means to encourage public participation in municipal affairs, the Superior Court ruled neither could be employed in effecting zoning changes because the State Zoning Act was "specific in detailing the manner in which zoning ordinances may be amended." *Township of Sparta v. Spillane*, 125 N.J. Super. 519, 524, 312 A.2d 154, 156–57 (1973); *see also Smith v. Township of Livingston*, 106 N.J. Super. 444, 449, 256 A.2d 85, 88 (1969). The decisions turned of course on "the exclusivity and uniqueness of the Zoning Act itself (and the related Planning Act) and the Legislature's evident intention of providing *uniformity of procedure* for all municipalities in the State in zoning matters." *Township of Sparta v. Spillane*, 125 N.J. Super. at 526, 312 A.2d at 157 (emphasis added).

The issue in the Washington case, *Leonard v. City of Bothell*, 87 Wash. 2d 847, 557 P.2d 1306 (1976), was whether the appellants could obtain a referendum on a rezoning ordinance adopted by the city council. The Supreme Court of Washington ruled they could not; the ordinance, the court said, was not "a legislative policy–making decision, and thus it [was] not subject to a referendum election." 87 Wash. 2d at 581, 557 P.2d at 1309. In the court's view "[t]he legislative body essentially [was] then performing its administrative function." And the court further noted it had "characterized rezone decisions as quasi–judicial acts by the municipal legislative body." 87 Wash. 2d at 850, 557 P.2d at 1309 (citations omitted).

Our task here, as the majority emphasized at the outset, "is to ascertain and give effect to the intention of the legislature [of the State]. *Reefshare, Ltd. v. Nagata*, 70 Haw. 93, 100, 762 P.2d 169, 174 (1988)."

The citation of decisions rendered by courts elsewhere in giving effect to dissimilar statutory language or in applying a rule of law we do not follow impedes rather than furthers the task.

In stark contrast to the New Jersey Zoning Act's specific provisions "detailing the manner in which zoning ordinances may be amended," *Township of Sparta v. Spillane*, 125 N.J. Super. at 524, 312 A.2d at 157, HRS § 46-4 contains nothing in the way of a procedural requirement relating to the exercise of zoning power by the counties other than the directive that it "shall be exercised by ordinance." And in contrast to the Supreme Court of Washington, we regard a zoning amendment as "legislative action" rather than an administrative or quasi-judicial act of a municipal legislative body. *Kailua Community Council v. City & County*, 60 Haw. 428, 432, 591 P.2d 602, 605 (1979).

It is not "our practice to decide important questions of law by dicta from unrelated cases." *In re Hawaiian Tel. Co.*, 67 Haw. 370, 379, 689 P.2d 741, 747 (1984) (citation omitted). To say "we agree with the reasoning and statements made by the respective courts as applied to the process of zoning by initiative[,]" when their decisions are manifestly inapt only underscores the deficit in this court's reasoning. The same may be said of the attempt to pass off "the Nukolii case [as] inapposite."

The majority skips lightly over this court's decision in *County of Kauai v. Pacific Standard Life Ins. Co.*, 65 Haw. 318, 653 P.2d 766 (1982), *appeal dismissed sub nom. Pacific Standard Life Ins. Co. v. Committee to Save Nukolii*, 460 U.S. 1077 (1983), by rationalizing that we were "not faced [there] with the issue of whether zoning by referendum is permissible in light of HRS § 46-4." But the holding here is premised on a conclusion that "it is *abundantly clear* that the legislature . . . established a public policy of not effectuating land use zoning through the initiative process." (Emphasis added). In practical effect there is, of course, no difference between initiative and referendum; the former is no less an instrument of direct democracy than the latter. And if it is so clear now that the use of such an instrument is interdicted by HRS § 46-4, it would have been clear too in 1982, if not to this court, to the litigants and the attorneys adversely affected by the referendum vote repealing a zoning ordinance.

Something as *abundantly clear* as the majority would have us believe could hardly have escaped the attention of persons whose stake in the development there probably was as great as that of the developer and

landowner here. Zoning by referendum was no less a matter of great public import then than zoning by initiative is now. This court thus had the power, *sua sponte*, to notice plain error and correct it if justice so required. *State v. Fox*, 70 Haw. 46, 56 n.2, 760 P.2d 670, 676 n.2 (1988). That neither the litigants nor the court noticed the established policy against zoning by referendum belies the claim of clarity of legislative intent.

## C.

This intent, the opinion declares, may also be gleaned from the fact that "[i]n 1957, when the Zoning Enabling Act was enacted in substantially the same form that it exists today, initiative was not available at either the state or local government levels." The majority thus deems it reasonable "to conclude that the legislature did not contemplate zoning through the initiative process in enacting the Zoning Enabling Act." "If the legislature intended otherwise," the opinion asserts, "it would have so legislated." This, of course, is nothing more than unfounded conjecture.

Inasmuch as the voters of the City and County of Honolulu are being divested of a right granted by the City's charter to decide directly what serves the public interest in zoning, it behooves the court to rest the decision on a firmer foundation. If intent is to be inferred at all from legislative inaction, a more logical premise from which to proceed would be the inaction following the referendum on Nukolii and our decision in *County of Kauai v. Pacific Standard Life Ins. Co., supra.*

The majority's attempt to find support for its decision in the enactment of the State General Plan, HRS chapter 226, and in the rejection of proposals for legislation through initiative by the Constitutional Conventions of 1950, 1968, and 1978 also suffers from similar infirmities. Nothing related to these events serves as a logical premise from which an intent to establish "a public policy of not effectuating land use zoning through the initiative process" may be inferred.

## II.

The issue on appeal being one of statutory interpretation, my analysis begins as it must with the statute in question, HRS § 46-4.

The genesis of HRS § 46–4 is traceable to 1957 when the Territorial Legislature found "[t]he pressure of a rapidly increasing population . . . require[d] an orderly economic growth within the various counties, and the conservation and development of all natural resources." Session Laws of Hawaii (Haw. Sess. Laws) 1957, c 234, § 1. "Adequate controls," it said, "must be established, maintained and enforced by responsible agencies of government to reduce waste and put all of our limited land area, and the resources found thereon, to their most beneficial use." *Id.* The legislature therefore passed an act designed, "by means of zoning ordinances and regulations enacted by and under [the] act, and in accord with a long range, comprehensive general plan, to promote the health, safety, convenience, order, welfare and prosperity of the present and future inhabitants of [Hawaii]." *Id.*

The section of the act relating to county zoning provided in part that "[z]oning in all counties shall be accomplished within the framework of a long range, comprehensive, general plan prepared or being prepared to guide the overall future development of the county[,]" and "[z]oning shall be one of the tools available to the county to put the general plan into effect in an orderly manner." 1957 Haw. Sess. Laws, c 234, § 9. "The zoning power granted [under the act was to] be exercised by . . . ordinance . . . ." *Id.* And the granted powers, which included the power of enforcement, were to "be liberally construed in favor of the county or city and county exercising them, and in such a manner as to promote the orderly development of each county or city and county in accord with a long range, comprehensive general plan, and to insure the greatest benefit for [Hawaii] as a whole." The provisions of the section, furthermore, were not to "be construed to limit or repeal any powers [then] possessed by any county to achieve such ends through zoning and building regulations except insofar as forest and water reserve zones are concerned." *Id.*

As the majority notes, the Zoning Enabling Act "was enacted in substantially the same form it exists today." A fair reading of its relevant language ineluctably leads to a conclusion that the legislature recognized zoning was primarily a matter of county concern and imposed a modicum of restraints on the exercise of the power by the counties. For the plain language of HRS § 46–4 only compels a county to accomplish zoning by ordinance within the framework of a long range, comprehensive general plan designed to guide its overall future development.

"The intention of the legislature," we have said, "is to be obtained primarily from the language contained in the statute itself." *In re Hawaiian Tel. Co.*, 61 Haw. 572, 577, 608 P.2d 383, 387 (1980). And "where the language of the law in question is plain and unambiguous, construction by this court is inappropriate and our duty is only to give effect to the law according to its plain and obvious meaning." *Id.* at 577–78, 608 P.2d at 387. The circuit court erred by engaging in construction where none was required and concluding that zoning is a power to be exercised exclusively by the county's legislative body. This court also subjects the plain language of HRS § 46–4 to construction and concludes the statute "established a public policy of not effectuating land use zoning through the initiative process." I have searched the statute in vain for anything that even intimates either conclusion is justified. Reading the language of the statute as written by the legislature and construing the powers granted therein "liberally . . . in favor of the county . . . exercising them" as directed by HRS § 46–4(a), I conclude the statute does not divest the people of the City and County of Honolulu of a political right granted them by the City's charter.

The holding of the majority in essence is that its notion of what constitutes good planning, which is nowhere stated in the statute, must prevail over a decision made by the people of the City and County of Honolulu when they adopted the City charter that a zoning ordinance could be passed by the direct vote of the people. But "[c]harter provisions with respect to a political subdivision's executive, legislative and administrative structure and organization [are] superior to statutory provisions, subject to the authority of the legislature to enact general laws allocating and reallocating powers and functions." Haw. Const. art. VIII, § 2. Because the City's legislative structure includes the people and their power to enact legislation through popular vote and the legislature has not exercised its authority to pass a general law reallocating this power where zoning amendments are concerned, I conclude too that the Home Rule provisions of the State Constitution dictate a reversal of the trial court.

Unlike the majority, I am not deterred by the possibility that a zoning amendment effected by initiative may be inconsistent with the City's long range, comprehensive general plan. There is, of course, no certainty that a popular vote will reflect the objectives and policies of the plan. Yet, there is no certainty too that the City Council's zoning amendments will always reflect these objectives and policies. "[T]here is no more advance assur-

ance that a legislative body will act by conscientiously applying consistent standards than there is with respect to voters." *Eastlake v. Forest City Enters., Inc.*, 426 U.S. 668, 675 n.10 (1976).[2]

A zoning amendment enacted by the City Council is subject to judicial review for conformity with standards enunciated in the general plan, and so is a zoning amendment enacted by initiative. That the amendment was adopted by popular vote does not immunize it from judicial review. *Cf. Lucas v. Colorado Gen. Assembly*, 377 U.S. 713, 736 (1964) ("the fact that an apportionment plan is adopted in a popular referendum is insufficient to sustain its constitutionality or to induce a court of equity to refuse to act.").

Thus, I would vacate the judgment of the trial court and remand the case. If the plaintiffs then amend their pleadings to seek a review for consistency between zoning amendment and plan, the trial court could compare the two and invalidate the ordinance if the circumstances demand.[3]

---

[2] Note 10, in its entirety, reads:

The Ohio Supreme Court's analysis of the requirements for standards flowing from the Fourteenth Amendment also sweeps too broadly. Except as a legislative history informs an analysis of legislative action, there is no more advance assurance that a legislative body will act by conscientiously applying consistent standards than there is with respect to voters. For example, there is no certainty that the City Council in this case would act on the basis of "standards" explicit or otherwise in Eastlake's comprehensive zoning ordinance. Nor is there any assurance that townspeople assembling in a town meeting, as the people of Eastlake could do, *Hunter v. Erickson*, 393 U.S. 385, 392 (1969), will act according to consistent standards. The critical constitutional inquiry, rather, is whether the zoning restriction produces arbitrary or capricious results.

[3] But a familiarity with the plan and with Sandy Beach and its environs tells me the plaintiffs' burden would be a heavy one.