[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
Introduction
The plaintiff applicant, Shapiro Farm Limited Partnership (hereinafter, "Shapiro"), has appealed from a decision of the defendant, Planning and Zoning Commission of the Town of North Branford (hereinafter, "the Commission"), denying its three part application to amend certain sections of the zoning regulations, rezone its 38 acre parcel, and grant a special permit. The plaintiff seeks review of these denials under General Statutes 8-30g, et. seq., the "Affordable Housing Land Use Appeals Act" (hereinafter, "the Act").
The plaintiff owns a 38 acre parcel[1] located on the southerly side of Route 80 (Foxon Road) which is presently zoned Industrial I-3. On May 14, 1992, it submitted the application CT Page 8832 in order to build 40 units, including 10 affordable units under the statute.[2] Public hearings commenced on June 18, 1992 and were completed on July 16, 1992. On August 6, 1992, the Commission voted to deny the requests to amend the zoning regulations and change the zone and took no action on the special permit request.
The Act, at 8-30g(d), allows an unsuccessful applicant to file a modified application after denial and Shapiro submitted such an application on August 19, 1992. (Return Item 18). On August 26, 1992, the Commission held a public hearing, and on September 17, 1992, the Commission denied this new proposal. The applicant then filed the instant appeal challenging both denials.
 II.
Discussion
 A.
In its brief and at trial, the Commission argued that as the plaintiff's original and modified applications do not satisfy the requirements for an affordable housing development as defined by the Act,[3] the appeal procedures of the Act does not apply. The Commission states that the plaintiff has not submitted sufficient information to show that the development will contain the appropriate number of affordable units.
The Commission does acknowledge that the applicant submitted a document which indicated that "ten (10) homes would be `affordable' in accordance with the zoning regulations." (Return Item 19). That document also indicates that "the proposed project involves the development of approximately thirty-eight (38) acres within the Doral Farms property for single family residential units in accordance with the affordable provisions within the North Branford Zoning Regulations." Additionally, the Commission acknowledges that Exhibit A, attached to the application to amend section 42A.8.19(e), requests a change to a twenty year restriction (from the existing "in perpetuity" provision). (Return Item 2). The Commission maintains, however, that other than these items, the applicant has not submitted any documentation of deed restrictions with specific covenants revealing that the project will CT Page 8833 comply with the sales price and time restrictions of the statute.
At a special hearing on this issue on August 6, 1993, the applicant referred to the cover letter to the application which had not previously been made part of the record. The cover letter noted that the "client is making an affordable housing application . . . as defined in 8-30g of the Connecticut General Statutes." (Return Item 1A). Additionally, the applicant referred to the cover letter submitted with the modified application on August 19, 1992. (Return Item 18). That letter refers to the Act in two places: the first, referencing 8-30g(d) ("[I]n accordance with the provisions of8-30g(d) . . . my client hereby submits the proposed modifications of its affordable housing application. . .") and the second, referencing the public policy expressed in 8-30g. In Misky v. Planning and Zoning Commission of the Town of South Windsor, 7 Conn. L. Rptr. No. 16, 461 (November 1992), this court reviewed an application submitted under the South Windsor affordable housing regulations, which like the present case, failed to include specific documentation to indicate the proposal met the deed restricted aspects of the Act. In that case, this court found that as South Windsor's requirements were not similar to the Act's and as there was no indication that the Act's conditions would be satisfied, the application could not be deemed affordable under 8-30g.
The applicant alleged in paragraph three of its complaint that, "[t]he plaintiff submitted an affordable housing application to the North Branford Planning and Zoning Commission. . . ." This was admitted in the Commission's answer. Indeed, as noted by the applicant, at no time during the administrative procedure did the Commission or its staff ever raise this issue. See generally, Builders Service Corporation v. Planning and Zoning Commission, 208 Conn. 267, 299 n. 19 (1988); Fuessenich v. DiNardo, 195 Conn. 144, 151 (1985).
Section 42A.8.20 of the regulations covers the specific requirements for affordable units. Subsection A requires 25% of the units to be set aside as affordable. While General Statutes 8-30g(a)(1) only requires at least 20% of the units be set aside, this application, with the ten out of forty, meets this requirement. Subsections B and C utilize the statutory definition of 8-39A to define moderate income households and affordable housing. That section states: CT Page 8834
 "Affordable housing" defined. As used in this title, "affordable housing" means housing for which persons and families pay thirty per cent or less of their annual income, where such income is less than or equal to the area median income for the municipality in which such housing is located, as determined by the United States Department of Housing and Urban Development. General Statutes 8-39a.
Moreover, in order to determine whether an applicant is eligible (Return Item 54, 42A.8.20(C)), the Commission is to use the "same factors and methods of calculations used by HUD in determining median household income for eligibility for HUD administered programs." (Return Item 54, 42A.8.20(D)).
The issue that this court examined at the special hearing was whether the above requirements, which did not specifically mention the 80% rule of the Act's definition, required the court to find that the applicant did not have an affordable housing application. See Misky, supra. The applicant noted, however, that at the June 18, 1992 hearing, the chairman specifically discussed the 80% rule with the applicant. (Return Item 55, p. 5). Moreover, the Commission further stated that the section C regulations, discussed above, clearly incorporated the 80% rule. This court finds, therefore, that the conditions existing in Misky are absent in this case. Thus, notwithstanding the absence of a prepared deed or model covenant, the applicant's many references to the statute, together with the Commissions regulations, satisfy the three fold test of General Statutes 8-30g(1) concerning percentage of units, price of units, and time restrictions.
 B.
Section 8-30(g)b states that:
 "[a]ny person whose affordable housing application is denied or is approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling CT Page 8835 units . . . may appeal such decision pursuant to the procedures of this sect on."
In this case, Mr. Joseph Pasquino, President of the Woodbridge Development Group, general partner of Shapiro Farm Limited Partnership, testified that both at the time of the application and at the time of trial the plaintiff owned the subject property. He further introduced a copy of the deed. (Exhibit A). Certainly under traditional aggrievement rules, the plaintiff would be deemed aggrieved, Bossert Corporation v. Norwalk, 157 Conn. 279, 285 (1968). Moreover, as the Commission denied this affordable housing application, this court found at trial, and reiterates herein, that the plaintiff has a specific legal interest which has been injuriously affected by the Commission's decision and is therefore aggrieved. Walls v. Planning and Zoning Commission, 176 Conn. 475, 477-78
(1979).
 C.
1.
General Statutes 8-30g(c) states:
 (c) Upon an appeal taken under subsection (b) of this section, the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission that (1) the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record; (2) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (3) such public interests clearly outweigh the need for affordable housing; and (4) such public interests cannot be protected by reasonable changes to the affordable housing development. If the commission does not satisfy its burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision CT Page 8836 from which the appeal is taken in a manner consistent with the evidence in the record before it.
A review of this section indicates that the legislature has now placed the burden of proof on the commission, and not, as in traditional land use appeals, on the applicant. The Commission is required to cite reasons for its decision and the reasons are to be supported by sufficient evidence.
 a.
In the first application, the plaintiff sought to construct 40 single family units on 38.61 acres. Thus, in addition to the change of zone, from I-3 to R-40, the applicant attempted to modify the restriction in section 42A.8.1 which limited affordable housing complexes to 35 acres. The plaintiff likewise sought to amend the restriction in section 42A.8.3 which limited the total town wide units to 50 built per year. The initial proposal also sought to change the formula for buildable acreage (42A.8.9A; 9B), street frontage (42A.8.12), interior lots (42A.8.10), open space (42A.8.12), and restriction time (42A.8.19(E)). The town rejected all these proposals on August 6, 1992, charging that the modifications would adversely affect the town's recently adopted affordable housing regulations by, inter alia, authorizing:
 A. Developments on sites containing up to 40 acres. B. Ability to construct up to 50 affordable dwelling units within a 12 month period. C. Elimination of environmental factors including wetlands and flood hazard areas in determining the total number of lots permitted. D. Interior lots. E. Elimination of recreation open space. F. Elimination of the perpetuity provision.
The Commission further stated that these proposed amendments would not adequately protect the public health, safety and welfare, would conflict with the town's strategy to encourage small scale projects throughout the town, and would CT Page 8837 negatively impact the schools. (Return Item 25). The Commission denied the application to change the zone stating that a previous request had been denied on April 18, 1991. Additionally, it expressed its desire to have the property utilized for industrial development. While recognizing that the proposal was consistent with the 1991 Plan of Development, the Commission stated that the Plan was only advisory, that the highest and best use of the property was for industrial development, the tax revenue from an industrial use would be greater than from 20 potential single family dwellings and that the Economic Development Commission desired that the present industrial zoning classification remain intact. (Return Item 16). The Commission did not act on the special use permit application deeming it moot.
In response to these denials, the plaintiff filed a modified application on August 19, 1993, pursuant to General Statutes 8-30g(d). (Return Item 18). The modified application deleted almost all of the requested changes in the first application including the increase of maximum lot size to 40 acres, the formula for buildable acreage, the street frontage proposal, the request for interior lots, the open space proposal. (Return Item 18). Only two requests remained: (1) to increase the number of affordable units allowed to be constructed in a twelve month period to 25 (from the existing 12.5 figure) and (2) to change the deed restriction to 20 years (from the existing "in perpetuity" provision). The plaintiff's new application thus sought to build only 23 homes as opposed to 40 (and 8 fewer than that allowed in the Commission's regulations) on 29.19 acres (within the 35 allowed by 42A.8.1). At the September 3, 1992 hearing, the applicant further noted that this 23 lot proposal had received approval from the Inland Wetlands Commission. (Return Item 60). The application was denied on September 17, 1992.
While this appeal was brought in two counts, the first, for the denial of the initial application, and the second, for the denial of the modified application, the plaintiff has indicated both at trial and in its brief (page 11) that it is seeking review only on the second denial. With the exception of the background information, this court will thus confine itself to that latter decision.
b. CT Page 8838
Prior to voting, Planning and Zoning Administrator Schutz read a draft resolution, later adopted by the Commission, concerning the proposed changes to the text of 42A. He stated seven concerns. They will each be addressed.
1.
Reason one states:
 The North Branford Planning and Zoning Commission at their December 5, 1991 meeting adopted the Town's first affordable housing regulation. The purpose of this regulation, in part, is to increase the diversity of the Town's housing stock in accordance with P.A. 88-338 and address the community's affordable housing needs. Furthermore, the Commission approved a 42 Lot affordable housing development at their May 7, 1992 meeting which acknowledges the Commission's commitment and leadership role.
This court is, from other cases, aware that the Commission has adopted its own affordable housing regulation. It should obviously be commended for its initiative. Moreover, to the extent an application has been approved thereunder providing for 10 affordable units (Return Item 60, p. 4), the town is moving forward toward meeting its goal of 455 affordable housing units.[4] This fact alone, however, the approval of the 10 affordable units within the 42 unit complex, is not a reason which would justify a denial. There is nothing about this prior approval that could be deemed a substantial public interest in health, safety or other matters which the Commission may legally consider as grounds for a denial under General Statutes 8-30g(c)(2).
2.
The second, third, and fourth reasons state:
 2. The proposed amendments, which are formulated for a specific site, contain new or modified language which adversely affect the intended goals CT Page 8839 and objectives of the affordable housing strategy for the Town of North Branford. Specifically, the proposed text amendments would permit the following:
 A. Ability to construct up to 50 affordable dwelling units within a 12 month period.
 B. Elimination of the perpetuity provision.
 The introduction of and the elimination of the noted amendments has a detrimental impact on the intended objectives of the existing affordable housing regulation. Accordingly, the Commission is concerned with a proposed regulation that does not adequately protect the public health, safety and welfare.
 3. The Commission, after reviewing the modified text amendment, expressed disappointment that the applicant chose to modify the existing affordable housing regulations which have been carefully formulated to meet the goals of the Town's Plan of Development and Housing Partnership Committee.
 4. Because the applicant chose to modify the existing affordable housing regulations and due to the elimination of the text noted above and introduction of new language, it is the position of the Commission that the general public health interests cannot be protected by attempting to make reasonable modifications to the subject petition.
Section 42A.8.3 allows a total of 50 single family units to be built in one year with a maximum limitation of 200 units townwide. Section 42A.8.19A requires that at least 25% CT Page 8840 must be deemed affordable for moderate income households as defined by General Statutes 8-39A. While under that section, a theoretical maximum of 50 affordable units could be built (i.e. 100 per cent of the units would be affordable), apparently the Commission assumes that the minimum, or 12.5 (25%) will be constructed per year. (Return Item SS, pp. 14-15). The Commission did not really address this specific issue in its brief and the plaintiff posits that the regulation now only allows the minimum of 12.5 units. This is not the question for this court, however. The question is broader and covers both the 25% limitation as well as the overall cap.
The 25% limitation has not been challenged by this developer. Nevertheless, in a prior decision involving this Commission, the court held that a denial based, in part, on a request for a 50% split of affordable/market rate homes was improper. Indian River Associates v. North Branford Planning and Zoning Commission, 6 Conn. L. Rptr. No. 13, 372 (1992). In that decision, which also addressed the issue, similar to this case, of the affordable percentage being set aside in perpetuity, this court stated:
 Finally, the application was denied because the proposal restricted the affordable units to twenty per cent of the total units and for the twenty year limitation. Such a restriction conforms to the statutory definition of an affordable housing development. General Statutes 8-30g(1)(B). The Commission requested the affordable percentage be fifty per cent and the set aside period be for perpetuity. This, the Commission stated, would not only provide for a more desirable regulation but would also "alleviate the town losing any of its affordable housing stock inventory to fair market units.
 While this court does not necessarily disagree with either of these reasons, it cannot sanction them. This court does not interpret the statute as allowing a Commission to impose more stringent percentages or set aside periods. If the town CT Page 8841 believes the Act should have different requirements, it may take that up with the Legislature. An applicant need only propose a project with "not less than" twenty percent of the units for "at least" twenty years. It may chose to set aside more units and for a longer period — but it may not be ordered to as a condition for approval under the Act. An applicant and a town could enter into a contract for a longer period pursuant to Section 8-2g(a) but that provision is not applicable in this case.
Indian River was issued on May 8, 1992, about 5 months after the regulation at issue was promulgated in December, 1991. These applications were filed in May and August, 1992. This Commission was fully aware of this court's ruling when it stated its reasons.
More important than the 25% requirement is the 50 unit cap. Notwithstanding the town's own Plan of Development, which recognizes a need for 455 affordable units (Return Item 44, p. 36), this regulation, which, according to reason one is to "address the community's affordable housing needs", has a self imposed limitation of 50 affordable units. This court cannot see any lawful reason to maintain a limit on the total of affordable units — let alone one that only reaches approximately 11% of the town's stated goal. The 12.5 affordable unit cap does not enable the town, in reality, to address the affordable housing need. It is clearly not in conformance with the legislature's mandate to have zoning regulations "encourage the development of housing opportunities . . . ." and "promote housing choice and economic diversity in housing, including housing for both low and moderate income households. . . ." P.A. 84-263; P.A. 91-392. There is no similar limit for other construction. Such a cap and such a reason is clearly unlawful as it discriminates against persons of lower incomes. See Builders Service Corporation v. Planning and Zoning Commission, supra, 298; Suffolk Interreligion Coalition on Housing v. Town of Brookhaven, 575 N.Y.S.2d 548, 549 (Sup.Ct. App. Div.2d Dept. 1991); South Burlington County NAACP v. Township of Mount Laurel, 336 A.2d 713 (1975). The applicant's request to enlarge the cap to 50 affordable units per year is clearly not unreasonable; indeed, there should be no CT Page 8842 need to make such a request as the present cap is unlawful.
The second reason for denial also concerns the requirement to set aside the units in perpetuity. (Section 42A.8.20E). As set forth in Indian River, this restriction also violates the Act.
3.
The fifth reason states:
 The proposed text amendments, while intending to enable the Town to meet its affordable housing obligation, conflict with the Town's housing strategy which encourages the development of small scale projects scattered throughout the community.
As previously noted, the plaintiff is only proceeding on the modified application. The two changes do not in any way affect the above mentioned strategy encouraging small scale projects. Indeed, the new application reduced the number of lots to 23, eight less than that allowed by the regulations. (Return Item 18).
4.
Reason six states:
 The proposed modified text amendments are inconsistent with the goals and objectives of the Plan of Development which encourages affordable housing opportunities which are compatible and harmonious with the use and enjoyment of nearby residential properties.
This court finds nothing in the two proposals which could be deemed inconsistent with the goals and objectives of the Plan of Development. Indeed, the Plan acknowledges the lack of affordable housing in Town with only 2.5% of the current stock, or 114 dwelling units meeting the statutory definition. (Return Item 44, p. 36).
5. CT Page 8843
Reasons seven states:
 The maximum potential number of dwelling units permitted under the proposed regulation can place a negative impact on schools and other public services. The Superintendent of Schools in his letter to the Commission dated July 1, 1992, expressed concern with affordable housing developments which fall within the same geographical areas of Town. Allowing the concentration of higher density residential developments in one section of the Town will dramatically affect the projected enrollment counts and threaten the Town's ability to properly service future population growth.
As in the above reasons, this court finds nothing in the proposed regulation changes or even this proposed complex that could be deemed a negative impact on the schools. In TCR New Canaan, Inc. v. Planning and Zoning Commission of the Town of Trumbull, 6 Conn. L. Rptr. No. 4, 92, this court discussed our long standing disapproval of fiscal zoning. See, Beach v. Planning and Zoning Commission, 141 Conn. 79, 84-85 (1954). "Fiscal zoning per se is irrelevant to the statutory purposes of zoning." Oakwood at Madison, Inc. v. Township of Madison,283 A.2d 353, 357 (1971).
6.
"[W]here a zoning commission has formally stated the reasons for its decision the court should not go behind that official collective statement of the commission. It should not attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision. DeMaria v. Planning and Zoning Commission, 159 Conn. 534,541 (1970). The Commission has the burden of proof in this case pursuant to General Statutes 8-30g(c). The stated reasons do not meet the test therein and the Commission has thus not met its burden. At the September 11, 1992 meeting, the Commission first denied the application to amend the regulations as discussed above (application 91-51) and took no action CT Page 8844 on the corresponding special permit request (application 91-53) deeming it to be moot. (Return Item 22).
 c.
There was no request to modify the zone change application. (Return Item 18). It was noted that the development could only occur in an R-40 zone. (Return Item 18). The prior zone change request thus was an inherent part of the modification and treated as such by the parties. (Return Items 19-22). No action was taken at the September meeting on the request to change to R-40, presumably because of the denial of the other application. (Return Items 23, 24). This court must, however, address the zone change issue. The Commission denied the original request on August 6, 1992. (Return Item 16). In its resolution, it listed 14 findings/concerns. Findings 1-4 are factual comments about the property. Finding 5 noted the prior denial in April, 1991. The remaining findings, with the exception of finding 10, all concern the Commission's desire to have the property developed for industrial use.
In TCR, supra, this court reviewed a request to construct a high density multiple family affordable housing project in Trumbull, Connecticut. The land upon which the project was sought to be built was also zoned industrial. The Commission therein denied the three part application to adopt regulations, change the existing zone, and grant a site plan, in part, because of a similar desire to develop an industrial park. This court rejected that argument, under the facts in that case, finding that the interests in developing the subject land as industrial did not outweigh the need for affordable housing. Id., p. 104. This case is not that different. In 1991, the town adopted a new Plan of Development. It showed this parcel as residential. (Return Item 44, Map 7). The Plan also reports that the total land area of North Branford is approximately 17,200 acres of which 4,300 acres is vacant within residential zones. There are approximately 628 existing vacant lots on 500 acres with 3,800 acres in vacant tracts. 5,800 acres, known as the Lake Gailord watershed, or 34% of the town's total land area is held as open space owned by the South Central Connecticut Regional Water Authority. According to the Plan, "existing zoning and land characteristics could permit 3,200-3,900 additional dwelling units for a saturation population of 23,000-25,300 and increase of 9,700-11,800 CT Page 8845 persons." (Return Item 44, p. 14).
Approximately 11% or 1,880 acres is zoned industrial or business, with 650 acres now in a quarry use, 750 acres for industrial, 330 in business and 150 acres proposed for elderly housing. (Return Item 44, p. 14). Only 35% of the 1,080 acres (industrial and business) is developed. It is noted that the potential exists for 3.2 million square feet of business/industrial floor area, a doubling of current space. Thus, unlike Trumbull, North Branford is a developing community. At the hearing, the Town, through testimony, attempted to show the need for retaining this particular piece as industrial. Robert Dow of Dow Realty testified to the need of industrial zoned land and that the subject piece was very marketable. (Return Item 58, pp. 11- 12). Joseph Ochenknowski, of the Economic Development Commission, related that body's desire to maintain the parcel's present zoning designation. (Return Item 32). He noted that "not too many industrial properties have "city water, sewer, electricity and gas" making this an unusual piece. (Return Item 58, p. 17).
At the same time, however, Scott Fitton Co. submitted a report covering the marketability of the parcel for an industrial use. They noted, in part, that:
 Based on calculations developed by the North Branford Planning Department, the real property tax yield of the Subject Property is estimated to be only marginally higher if fully developed to its maximum industrial development potential versus creating an additional 20 residential homes on the site. Assuming maximum industrial capacity (based on three-story construction) for the site under present zoning of roughly 120,000 square feet, tax revenue is estimated at $64,500 a year compared to $52,000 in tax revenues under the present proposed residential plan.
 The tax yield comparisons becomes even more striking, however, when evaluating the revenue potential of a market-driven industrial site. Potential tenants of Class A industrial space typically seek CT Page 8846 highly flexible, single-story facilities with ample parking, storage and docking accommodations; multiple-story industrial facilities are largely unmarketable. Thus based on a more reasonable development scenario of the site as an industrial park, projected tax revenues are estimated to be slightly less, than the proposed residential plan, or roughly $51,000 a year.
The Commission posits that while there are similarities to the Trumbull situation (Trumbull had 1.8% of the housing stock deemed affordable; North Branford, 2.5%, both properties with land designated industrial), there is one major difference: North Branford has an affordable housing regulation. The Commission suggests that it be given a chance to let this regulation work.
Cases brought under the Act are reviewed under a different light than those filed under General Statutes 8-8. General Statutes 8-30g(c) requires a Commission to prove that the decision is necessary to protect substantial interest in health, safety or other matters which the Commission may legally consider. This court believes that the existence of the regulation is such a matter which the town can legally consider. North Branford argues that it should be given the opportunity to utilize this new section of its zoning regulations. As a practical matter, however, this new regulation has failed to do the job. First, as discussed before, it demands far more than that passed by the legislature. Indeed, the applicants herein argue that the perpetuity restriction constitutes an unreasonable restraint of alienation under Alexander v. House, 133 Conn. 725 (1947). This court need not address this issue as a result of its previous finding. Nevertheless, the cap on construction suggests a determination to not meet the stated goal of 227 units by 1995 or the ten per cent total of 455 units. (Return Item 54, 42A.8.3; 27, p. 7).
This court has heard argument that 42 units have been approved. Yet that too is fictional. While the Commission has approved a 42 lot subdivision, the project will not go forward as it was denied the necessary approval by North Branford's Water Pollution Control Authority. The applicant's CT Page 8847 appeal on that denial was dismissed by the court, Hadden, J., on a finding that there was no right to an appeal from a decision of a water pollution control authority. Frumento v. North Branford WPCA, 8 Conn. L. Rptr. No. 17, 546 (April 26, 1993).[5] Thus, the Commission's approval is simply illusory. The new regulations are not addressing the problem and thus, the fact of their existence, is not enough to overcome the town's burden. The town has a stated goal to alleviate the affordable housing shortage. (Return Items 44, p. 37; 27, p. 8). Yet, it is not happening.
Presumably future applications which otherwise comply with the regulations will not be hindered by roadblocks such as those encountered in this application. "A town's preference to maintain a particular zoning category . . . is normally based on a variety of circumstances. But that does not relieve the court of weighing the town's justification against the adverse effect that the plaintiff will suffer by the denial." Huntington Branch, NAACP v. Town of Huntington,844 F.2d 926, 937 (2nd. Cir. 1988), aff'd 488 U.S. 15, reh. den. 488 U.S. 1023 (1988). See also, Robert J. Kaufman v. City of Danbury Zoning Commission, 9 Conn. L. Rptr. No. 19, 583, 606 (September 27, 1993) Mottolese, J. The application to change the zone is granted. General Statutes 8-30g(c)(2).
 III.
Conclusion
The court concludes that the regulations at issue, to be consistent with the Act must be corrected to delete the 25% and in perpetuity requirements. The cap on units must be modified also. This court concludes that the plaintiff's appeal is sustained and the Commission's decisions are reversed.
MARSHALL K. BERGER, JR. JUDGE, SUPERIOR COURT